# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP741-CR |
| COMPLETE TITLE: | State of Wisconsin,<br>       Plaintiff-Respondent,<br>   v.<br>Javien Cajujuan Pegeese,<br>       Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 383 Wis. 2d 601,918 N.W.2d 127
(2018 – unpublished)

| | |
|---|---|
| OPINION FILED: | May 31, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 10, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Rock |
|   JUDGE: | Richard T. Werner & John M. Wood |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | DALLET, J. concurs, joined by A.W. BRADLEY, J. (opinion filed). |
|   DISSENTED: | |
|   NOT PARTICIPATING: | ABRAHAMSON, J. did not participate. |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed by *Thomas B. Aquino*, assistant state public defender. There was an oral argument by *Thomas B. Aquino*.

For the plaintiff-respondent, there was a brief filed by *Aaron R. O'neil*, assistant attorney general, with whom on the brief was *Joshua L. Kaul*, attorney general of Wisconsin. There was an oral argument by *Aaron R. O'neil*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP741-CR
(L.C. No. 2015CF1244)

STATE OF WISCONSIN : IN SUPREME COURT

State of Wisconsin,

    Plaintiff-Respondent,

    v.

Javien Cajujuan Pegeese,

    Defendant-Appellant-Petitioner.

**FILED**

**MAY 31, 2019**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of an unpublished, per curiam decision of the court of appeals, State v. Pegeese, No. 2017AP741-CR, unpublished slip op. (Wis. Ct. App. Jun. 21, 2018), affirming the circuit court's[1] order denying Javien Cajujuan Pegeese's ("Pegeese") postconviction motion to withdraw his guilty plea. Pegeese claims that the circuit

---

[1] The Honorable Richard T. Werner initially presided, accepting Pegeese's guilty plea and sentencing him. On November 17, 2016, the matter was transferred to the Honorable John M. Wood, who presided over proceedings regarding Pegeese's postconviction motion to withdraw his guilty plea.

court's plea colloquy was defective under Wis. Stat. § 971.08 (2015-16)[2] and State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), because the circuit court failed to sufficiently explain, and Pegeese did not understand, the constitutional rights he would be waiving by entering a plea.  As a result of the claimed defects, Pegeese argues that he did not knowingly, intelligently, and voluntarily enter his plea.  Pegeese seeks to withdraw his plea and asks that this court remand to the circuit court for an evidentiary hearing under Bangert.  Pegeese also requests that this court exercise its superintending authority to require circuit courts to, at every plea colloquy, verbally advise a defendant of each individual constitutional right being waived and verify that a defendant understands the waiver of each right.

¶2  The State asserts that the circuit court's plea colloquy was not defective because a "Plea Questionnaire/Waiver of Rights" form ("Form CR-227"), completed by Pegeese with counsel prior to the colloquy, expressly listed each constitutional right Pegeese waived and required Pegeese to indicate next to each right that he knew and understood the right he was waiving.  The State asserts that the in-court colloquy otherwise ensured that Pegeese was knowingly, intelligently, and voluntarily waiving his constitutional rights.  The State therefore argues that Pegeese has not met his

---

[2] All subsequent references to the Wisconsin Statutes are to the 2015-16 version, unless otherwise indicated.

burden to show that he is entitled to a <u>Bangert</u> hearing, and that this court should not exercise its superintending authority, as Pegeese proposes, that circuit courts be required to personally advise defendants of each constitutional right being waived.

¶3 The circuit court's colloquy with Pegeese verified that the constitutional rights at issue were contained in Form CR-227, that Pegeese completed and signed the form with counsel, and that he wanted no further time to discuss matters with his lawyer. The colloquy further verified that Pegeese comprehended the contents of the form, and he and his lawyer acknowledged that he understood each constitutional right he was waiving by pleading guilty. The circuit court concluded that Pegeese was "freely, knowingly[,] and intelligently" entering his plea.[3]

¶4 We conclude that Pegeese has not met his burden to demonstrate that the plea colloquy was defective so as to

---

[3] We note that the transcript from the plea hearing reflects that the circuit court used the phrase "freely, knowingly[,] and intelligently" in describing Pegeese's plea. Form CR-227 uses a slightly different phrase in the section titled "Attorney's Statement," where the defendant's attorney states that the defendant "is making this plea freely, voluntarily, and intelligently." Neither phrase is inconsistent with the "knowingly, voluntarily, and intelligently" language this court used in <u>State v. Bangert</u>, 131 Wis. 2d 246, 251–52, 389 N.W.2d 12 (1986), and this court has more recently used the phrase "knowingly, intelligently, and voluntarily" in numerous cases. <u>See, e.g.,</u> <u>State v. Sulla</u>, 2016 WI 46, 369 Wis. 2d 225, 880 N.W.2d 659; <u>State v. Taylor</u>, 2013 WI 34, 347 Wis. 2d 30, 829 N.W.2d 482.

entitle him to the relief requested. We further decline to exercise our superintending authority to impose a specific requirement that at a plea hearing circuit courts must individually recite and specifically address each constitutional right being waived and then otherwise verify the defendant's understanding of each constitutional right being waived. Therefore, we affirm the court of appeals.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶5 On June 24, 2015, the State filed a criminal complaint charging then-16-year-old Pegeese with armed robbery as a party to a crime in violation of Wis. Stat. §§ 943.32(2) and 939.05. The criminal complaint alleged that on April 24, 2015, three individuals with their faces covered approached a pizza delivery driver, who was making a delivery to a home. It further alleged that one of the individuals ordered the delivery driver on the ground, that another individual brandished a pistol and struck the delivery driver in the head with the pistol, and that one of the three stole $168 in cash and a key fob from the delivery driver's pockets. According to the criminal complaint, police learned from the owner of the phone that was used to place the order for the pizza delivery that she overheard Pegeese and another person talking the next day about how one of them had "pistol whipped" the delivery driver.

¶6 On August 13, 2015, Pegeese pled guilty to robbery with threat of force as a party to a crime, in violation of Wis.

4

Stat. §§ 943.32(1)(b) and 939.05.   Prior to the plea hearing, Pegeese completed Form CR-227.[4]   Specifically, the "Constitutional Rights" section of Form CR-227 states as follows:

> I understand that by entering this plea, I give up the following constitutional rights:
>
> I give up my right to a trial.
>
> I give up my right to remain silent and I understand that my silence could not be used against me at trial.
>
> I give up my right to testify and present evidence at trial.
>
> I give up my right to use subpoenas to require witnesses to come to court and testify for me at trial.
>
> I give up my right to a jury trial, where all 12 jurors would have to agree that I am either guilty or not guilty.
>
> I give up my right to confront in court the people who testify against me and cross-examine them.
>
> I give up my right to make the State prove me guilty beyond a reasonable doubt.
>
> I understand the rights that have been checked and give them up of my own free will.

Waiver of each of these constitutional rights is acknowledged by marking the box next to each with an "X."

---

[4] Form CR-227 is a single page, two-sided document. Circuit courts will often attach other documents to the form.  The circuit court here attached a document titled "Elements of Common Criminal Offenses," which included the elements of the offense to which Pegeese pled guilty.

¶7 In the form, Pegeese confirmed his understanding of his plea agreement with the State: a joint recommendation of three years of probation. Pegeese acknowledged that he understood "the judge is not bound by any plea agreement or recommendations and may impose the maximum penalty," and that he understood the maximum penalty he faced was 15 years in prison, a $50,000 fine, or both. In the "Voluntary Plea" section of the form, Pegeese acknowledged, "I have decided to enter this plea of my own free will. I have not been threatened or forced to enter this plea. No promises have been made to me other than those contained in the plea agreement."

¶8 Pegeese signed and dated the form, which stated by the signature block:

> I have reviewed and understand this entire document and any attachments. I have reviewed it with my attorney (if represented). I have answered all questions truthfully and either I or my attorney have checked the boxes. I am asking the court to accept my plea and find me guilty.

Pegeese's attorney also signed the form, acknowledging that he discussed the form with Pegeese, believed Pegeese understood the form and the plea agreement, and that Pegeese was pleading "freely, voluntarily, and intelligently."

¶9 During the August 13 plea hearing, the circuit court conducted the following plea colloquy with Pegeese:

> THE COURT: Have you had enough time to talk to [your attorney] Mr. Hoag about your cases?
>
> THE DEFENDANT: Yes, sir.

6

THE COURT: Has he answered all the questions you've had?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you need more time to talk with him today?

THE DEFENDANT:  No, sir.

THE COURT: Are you satisfied with his representation?

THE DEFENDANT:  Yes, sir.

THE COURT: You have provided me today with a Plea Agreement and Waiver of Rights document; correct?

THE DEFENDANT:  Yes, sir.

THE COURT: That's your signature on the back side?

THE DEFENDANT:  Yes, sir.

THE COURT:  Did you read that document before you signed it?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand all the statements made in that document?

THE DEFENDANT:  Yes, sir.

THE COURT:  Any questions about anything in that document?

THE DEFENDANT:  No, sir.

THE COURT: Mr. Hoag, you reviewed the Plea Questionnaire with him?

MR. HOAG:  I read it to him, Your Honor.

THE COURT:  Do you believe he understands it?

MR. HOAG:  I do.

7

THE COURT: Mr. Pageese [sic], do you understand the Constitutional Rights you give up when you enter a plea today?

THE DEFENDANT: Yes, sir.

THE COURT: Any questions about those rights?

THE DEFENDANT: No sir.

¶10 After confirming again with Pegeese's attorney that Pegeese's plea was given "freely, knowingly[,] and intelligently," the circuit court accepted the plea and specifically found that Pegeese's plea was "freely, knowingly[,] and intelligently made." The circuit court withheld sentence, and instead put Pegeese on probation for three years consistent with the parties' joint recommendation.

¶11 On December 12, 2016, Pegeese filed a motion for postconviction relief pursuant to Wis. Stat. § (Rule) 809.30(2)(h), seeking withdrawal of his guilty plea. Pegeese argued that the circuit court's plea colloquy was constitutionally deficient because the circuit court failed to properly ensure on the record that Pegeese fully understood all of the constitutional rights he was waiving when he entered his guilty plea. Specifically, Pegeese asserted that despite completing Form CR-227, consulting with counsel, and engaging in the plea colloquy with the circuit court, he did not understand his constitutional rights to "(1) remain silent or testify, (2) use subpoenas to require witnesses to testify, (3) have a jury trial where all 12 jurors have to agree on guilt, (4) confront and cross-examine people who testify against him, and (5) make the [S]tate prove him guilty beyond a reasonable doubt." As a

8

result, Pegeese sought to withdraw his plea and requested an evidentiary hearing pursuant to Bangert.

¶12 On March 31, 2017, the circuit court denied Pegeese's motion for postconviction relief. The circuit court noted that the plea colloquy in Pegeese's case was "almost identical" to the plea colloquy that occurred in State v. Moederndorfer, 141 Wis. 2d 823, 416 N.W.2d 627 (Ct. App. 1987), where the court of appeals concluded that the plea colloquy was not constitutionally defective. The circuit court determined that a hearing was not necessary as both Pegeese and his counsel stated at the plea hearing that they went through the plea questionnaire, and Pegeese stated that he did not need more time to talk with his attorney. The circuit court noted that Pegeese had not attached an affidavit to support his assertions. The circuit court concluded that based on the record, which included both the plea colloquy and Form CR-227, Pegeese had not met his burden to establish there was a deficiency in the plea hearing so as to entitle him to a Bangert hearing. The circuit court noted that it specifically asked Pegeese on the record if he read Form CR-227 and understood it, and further ensured that Pegeese understood the constitutional rights he was waiving by pleading guilty. The reviewing circuit court further explained as follows:

> The Plea Questionnaire, Waiver of Rights form is not . . . a substitute for sufficient and adequate plea colloquy. It is a tool to be used to ascertain whether or not the defendant understands what he is doing by entering a plea. And I believe that's exactly what [the judge who took the plea] did in this

9

particular case. He used that plea colloquy as a tool to have this conversation on the record with the defendant. [The judge who took the plea] asked, Did you have any questions about those Constitutional Rights? And the defendant said, No, he had no questions.

As a result, the circuit court denied Pegeese's motion for postconviction relief and concluded that no Bangert hearing was necessary.

¶13 Pegeese appealed the circuit court's denial of his motion to withdraw his plea, asserting the same arguments he made before the circuit court. On June 21, 2018, the court of appeals issued an unpublished, per curiam decision affirming the circuit court. Pegeese, No. 2017AP741-CR, unpublished slip op., ¶1. Specifically, the court of appeals concluded that "the plea colloquy here was adequate as to the constitutional rights. The [circuit] court properly used the plea questionnaire form to establish context about those rights, and then asked Pegeese directly whether he understood the rights that he was waiving by pleading guilty." Id., ¶17.

¶14 Pegeese petitioned this court for review, and we granted his petition.

II. STANDARD OF REVIEW

¶15 We must determine whether the circuit court's plea colloquy was sufficient and whether an evidentiary hearing is required. "'When a defendant seeks to withdraw a guilty plea after sentencing, he must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in "manifest injustice."'" State v. Taylor, 2013 WI 34,

10

¶24, 347 Wis. 2d 30, 829 N.W.2d 482 (quoting State v. Brown, 2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906). A defendant may show manifest injustice by proving "that his plea was not entered knowingly, intelligently, and voluntarily." Id. (citing Brown, 293 Wis. 2d 30, ¶18).

¶16 Where a defendant does not enter his plea knowingly, intelligently, and voluntarily, his fundamental due process rights are violated such that the defendant is entitled to withdraw his plea. Id., ¶25 (citing State v. Cross, 2010 WI 70, ¶14, 326 Wis. 2d 492, 786 N.W.2d 64). Whether a defendant entered his plea knowingly, intelligently, and voluntarily is a question of constitutional fact that this court reviews de novo. Id. (citing Cross, 326 Wis. 2d 492, ¶14). "In making this determination, this court accepts the circuit court's findings of historical or evidentiary facts unless they are clearly erroneous." Id. (quoting Cross, 326 Wis. 2d 492, ¶14).

¶17 Whether Pegeese has shown that the plea colloquy was deficient such that Wis. Stat. § 971.08 or another mandatory plea hearing requirement was violated is a question of law that this court reviews independently. Id., ¶26 (citing Brown, 293 Wis. 2d 594, ¶21).

### III. ANALYSIS

¶18 Pegeese contends that he should be allowed to withdraw his plea because he did not understand the constitutional rights he was waiving when he entered his plea. He argues that the circuit court did not sufficiently explain or verify that he understood——and in fact he did not understand——the

11

constitutional rights he waived by entering a plea. Pegeese asserts that the plea questionnaire alone is insufficient, and that the plea colloquy here was deficient because the circuit court failed to individually review and specifically address each constitutional right and verify that he knew he would be waiving each right. Pegeese argues that he is thus entitled to a remand for a Bangert hearing. In addition, Pegeese asserts that this court should exercise its superintending authority to "adopt a clear rule that the plea judge has a duty to inform and verify that the defendant understands each constitutional right waived by the plea."

¶19 The State argues that the plea colloquy with Pegeese was sufficient and that the circuit court appropriately incorporated Form CR-227 into the colloquy. The State asserts that Pegeese has not met his burden, and that his plea was entered knowingly, intelligently, and voluntarily. The State urges this court to decline Pegeese's invitation to impose on circuit courts the additional duty when taking a plea, to independently review and specifically address the constitutional rights being waived. Alternatively, the State avers that even if the circuit court's plea colloquy was deficient, the circuit court's error was harmless such that Pegeese still would not be entitled to a Bangert hearing.

¶20 We conclude that Pegeese has not demonstrated the right to a Bangert hearing as the circuit court's plea colloquy and use of the plea questionnaire sufficiently explained and verified that Pegeese did understand the constitutional rights

12

he was waiving so as to fulfill the requirements of Wis. Stat. § 971.08 and Bangert. Accordingly, we need not reach the issue of harmless error. We further decline to exercise our superintending authority to impose a specific requirement that circuit courts individually recite each constitutional right and then otherwise verify the defendant's understanding that those rights are waived.

### A. Plea Colloquy Requirements

¶21 It has long been recognized that under the Due Process Clause, a defendant's guilty or no contest plea must be knowingly, intelligently, and voluntarily entered. State v. Bollig, 2000 WI 6, ¶15, 232 Wis. 2d 561, 605 N.W.2d 199 (citing Boykin v. Alabama, 395 U.S. 238, 242 (1969)); Bangert, 131 Wis. 2d at 257. Wisconsin imposes certain statutory and common law duties on circuit courts to ensure that a defendant's plea is given knowingly, intelligently, and voluntarily. See Taylor, 347 Wis. 2d 30, ¶¶30-31.

¶22 Wisconsin Stat. § 971.08 sets forth mandatory requirements that must be met before the circuit court may accept a defendant's guilty or no contest plea. Section 971.08 "is not a constitutional imperative," but rather is a procedural statute "designed to assist the trial court in making the constitutionally required determination that a defendant's plea is voluntary." Bangert, 131 Wis. 2d at 261. Among other things, circuit courts must "[a]ddress the defendant personally and determine that the plea is made voluntarily with

13

understanding of the nature of the charge and the potential punishment if convicted."[5]  § 971.08(1)(a).

¶23 This court has recognized that circuit courts have a number of duties at a plea hearing to ensure that a defendant's

_____

[5] Wisconsin Stat. § 971.08 states in full as follows:

(1)  Before the court accepts a plea of guilty or no contest, it shall do all of the following:

(a)  Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.

(b)  Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

(c)  Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."

(d)  Inquire of the district attorney whether he or she has complied with s. 971.095 (2).

(2)  If a court fails to advise a defendant as required by sub. (1)(c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea. This subsection does not limit the ability to withdraw a plea of guilty or no contest on any other grounds.

(3)  Any plea of guilty which is not accepted by the court or which is subsequently permitted to be withdrawn shall not be used against the defendant in a subsequent action.

14

guilty or no contest plea is knowing, intelligent, and voluntary, which include conducting a colloquy to:

> (1) Determine the extent of the defendant's education and general comprehension so as to assess the defendant's capacity to understand the issues at the hearing;

> (2) Ascertain whether any promises, agreements, or threats were made in connection with the defendant's anticipated plea, his appearance at the hearing, or any decision to forgo an attorney;

> (3) Alert the defendant to the possibility that an attorney may discover defenses or mitigating circumstances that would not be apparent to a layman such as the defendant;

> (4) Ensure the defendant understands that if he is indigent and cannot afford an attorney, an attorney will be provided at no expense to him;

> (5) Establish the defendant's understanding of the nature of the crime with which he is charged and the range of punishments to which he is subjecting himself by entering a plea;

> (6) Ascertain personally whether a factual basis exists to support the plea;

> (7) Inform the defendant of the constitutional rights he waives by entering a plea and verify that the defendant understands he is giving up these rights;

> (8) Establish personally that the defendant understands that the court is not bound by the terms of any plea agreement, including recommendations from the district attorney, in every case where there has been a plea agreement;

> (9) Notify the defendant of the direct consequences of his plea; and

> (10) Advise the defendant that "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the

15

offense [or offenses] with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law," as provided in Wis. Stat. § 971.08(1)(c).

Taylor, 347 Wis. 2d 30, ¶31 (quoting Brown, 293 Wis. 2d 594, ¶35).

### B.   Standards For Plea Withdrawal Post-Sentencing

¶24  Here, Pegeese brings a post-sentencing challenge to his guilty plea.  See State v. Booth, 142 Wis. 2d 232, 237, 418 N.W.2d 20 (Ct. App. 1987) ("[W]e conclude that the withholding of sentence and the imposition of probation . . . are functionally equivalent to sentencing for determining the appropriateness of plea withdrawal.").  As noted previously, to withdraw a plea after sentencing, the defendant must show by clear and convincing evidence that refusing to allow him to withdraw his plea would result in a "manifest injustice." Taylor, 347 Wis. 2d 30, ¶24.  Wisconsin courts have delineated the following circumstances where a manifest injustice occurs such that a plea may be withdrawn post-sentencing:

> (1) ineffective assistance of counsel; (2) the defendant did not personally enter or ratify the plea; (3) the plea was involuntary; (4) the prosecutor failed to fulfill the plea agreement; (5) the defendant did not receive the concessions tentatively or fully concurred in by the court, and the defendant did not reaffirm the plea after being told that the court no longer concurred in the agreement; and, (6) the court had agreed that the defendant could withdraw the plea if the court deviated from the plea agreement.

16

State v. Daley, 2006 WI App 81, ¶20 n.3, 292 Wis. 2d 517, 716 N.W.2d 146 (quoting State v. Krieger, 163 Wis. 2d 241, 251 n.6, 471 N.W.2d 599 (Ct. App. 1991)).

¶25 In support of his claim for plea withdrawal, Pegeese asserts that manifest injustice resulted because he did not understand the constitutional rights he waived and his plea was unknowing, unintelligent, and involuntary. Where a defendant seeks to withdraw a guilty or no contest plea post-sentencing due to a claimed error in the plea colloquy, the proper analysis has two steps. Taylor, 347 Wis. 2d 30, ¶27. We first "determine if the defendant should be allowed to withdraw the plea because the circuit court violated its duty under Wis. Stat. § 971.08 or other court-mandated duty." Id. Second, we "determine, if necessary, whether the failure to withdraw the plea would otherwise result in a manifest injustice." Id.

¶26 Defendants such as Pegeese who move to withdraw a plea based on a defective plea colloquy have the initial burden to meet a two-prong test: (1) the defendant must "make a prima facie showing of a violation of Wis. Stat. § 971.08 or other court-mandated duty"; and (2) the defendant must "allege that the defendant did not, in fact, know or understand the information that should have been provided during the plea colloquy." Id., ¶32 (citing Bangert, 131 Wis. 2d at 274). In order to make a prima facie showing, the defendant may not rely on conclusory allegations. Id. The defendant "must point to deficiencies in the plea hearing transcript" to meet his initial burden. Id. If the defendant fails to meet his initial burden,

17

then the circuit court must deny the defendant's plea withdrawal motion. See id.

¶27 When a defendant successfully meets both prongs, then that defendant is entitled to an evidentiary hearing, also known as a "Bangert hearing." Id. If a Bangert hearing occurs, the burden of proof shifts to the State to show "by clear and convincing evidence that the defendant's plea, despite the inadequacy of the plea colloquy, was knowing, intelligent, and voluntary." Id. (citing Bangert, 131 Wis. 2d at 274). In attempting to meet its burden, "[t]he State may use 'any evidence' to prove that the defendant's plea was knowing, intelligent, and voluntary, including any documents in the record and testimony of the defendant or defendant's counsel." Id. (citing Bangert, 131 Wis. 2d at 274-75). If the State fails to meet its burden at the Bangert hearing, then the defendant is entitled to withdraw his guilty or no contest plea. See id.

C. Application Of Legal Principles

¶28 We now analyze whether Pegeese has made a prima facie showing that the circuit court violated a statutory or common law duty in conducting the plea colloquy.[6] We begin with the plea colloquy itself. Pegeese claims that the plea colloquy was deficient because the circuit court violated its duty to "inform

---

[6] Neither party disputes that Pegeese meets his burden as to the second prong under Bangert, as he alleges that he failed to know or understand the constitutional rights he was waiving by entering a guilty plea. Accordingly, the focus of our analysis is on the first prong.

18

the defendant of the constitutional rights he waives by entering a plea and verify that the defendant understands he is giving up these rights". See Taylor, 347 Wis. 2d 30, ¶31.

¶29 However, the issue Pegeese raises is not necessarily a novel one. Wisconsin courts have considered the extent to which a circuit court may rely on a plea questionnaire. We now examine those cases.

¶30 In Moederndorfer the court of appeals concluded that Moederndorfer was not entitled to a Bangert hearing even though the circuit court relied in part on a form instead of specifically addressing each constitutional right individually. Moederndorfer, 141 Wis. 2d at 831. Shortly before the plea hearing, Moederndorfer completed a three-page "waiver of rights" form with his lawyer. Id. The form detailed each constitutional right being waived, and Moederndorfer initialed next to each. Id. at 827. At the plea hearing, the State entered the form as an exhibit, and the circuit court specifically referred to the form during the plea colloquy with Moederndorfer. Id. The following exchange occurred during the plea colloquy:

> THE COURT: By entering that plea of guilty, Mr. Moederndorfer, you give up rights, and these rights have been detailed in this three-page waiver of rights form. Your attorney has filed this on your behalf. Have you read this three-page form? You will have to answer out loud, sir.
>
> THE DEFENDANT: Yes.
>
> THE COURT: Have you read it this morning?

19

THE DEFENDANT: Yes.

THE COURT: In fact, you have read it within the last 15 minutes, I understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand what is in these three pages, Mr. Moederndorfer?

THE DEFENDANT: Yes.

THE COURT: Has [your attorney] assisted you in understanding what is in these three pages?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions of me as to what is in these three pages?

THE DEFENDANT: No.

THE COURT: Mr. Moederndorfer, is this your signature on Page 3 of this form?

THE DEFENDANT: Yes.

THE COURT: Are these your initials in the columns of each of these three pages?

THE DEFENDANT: That's correct.

THE COURT: And these initials signify that you have read each of the paragraphs and that you understand them before you placed your initials on them, is that correct?

THE DEFENDANT: Yes, Your Honor, on each and every one.

Id. at 828 n.1. The circuit court accepted the guilty plea and sentenced Moederndorfer. Id. at 825-26.

¶31 Moederndorfer subsequently moved to withdraw his plea, and the circuit court denied Moederndorfer's motion. Id. at 826. The court of appeals affirmed the circuit court, holding

20

that [Moederndorfer] did not meet his prima facie burden [under Bangert] of showing that the plea hearing record was defective. The record affirmatively demonstrates that [Moederndorfer] understood the constitutional rights he waived and understood the nature of the charge of burglary when he entered the plea of guilty.

Id. at 831-32.

¶32 The court of appeals rejected Moederndorfer's argument that the circuit court improperly relied upon the waiver of rights form and noted that in fact, defendants may be more likely to understand the rights being waived by reading a form "in an unhurried atmosphere, as opposed to reliance upon oral colloquy in a supercharged courtroom setting." Id. at 828. The court of appeals further explained:

A trial court can accurately assess a defendant's understanding of what he or she has read by making a record that the defendant had sufficient time prior to the hearing to review the form, had an opportunity to discuss the form with counsel, had read each paragraph, and had understood each one.

Id. The court of appeals reasoned that the circuit court expressly referenced the form on the record and inquired specifically as to whether Moederndorfer completed the form, whether Moederndorfer's attorney assisted him in completing the form, and whether Moederndorfer understood each of the paragraphs in the form. Id. at 828-30. The court of appeals therefore concluded that the plea colloquy satisfied the requirements of Wis. Stat. § 971.08 and Bangert.

¶33 While a waiver of rights form may be used, circuit courts are not to rely entirely on the form in a plea colloquy. Nearly five years after Moederndorfer, in State v. Hansen, 168

21

Wis. 2d 749, 755-56, 485 N.W.2d 74 (Ct. App. 1992), the court of appeals concluded that the circuit court's complete reliance on a plea questionnaire and waiver of rights form rendered the plea colloquy defective. In Hansen the circuit court only asked Hansen if he went over the form with his attorney and understood the form when he signed it, unlike in Moederndorfer where the circuit court specifically asked whether Moederndorfer understood the constitutional rights he was waiving. Id. at 752, 755-56. The court of appeals thus clarified as follows:

> Here, [the circuit court's] personal colloquy with Hansen did not include any discussion as to the constitutional rights which Hansen was waiving. Instead, the colloquy was limited to whether Hansen had gone over the Moederndorfer form with his attorney before he signed it and whether Hansen understood the form. We conclude that such limited personal colloquy is not the substantive kind of personal exchange between the trial court and the defendant which Bangert, [Wis. Stat. § 971.08], and Moederndorfer require.

Hansen, 168 Wis. 2d at 755.

¶34 The court of appeals explained that while Moederndorfer's approval of the form "certainly lessened the extent and degree of the colloquy otherwise required between the trial court and the defendant, it was not intended to eliminate the need for the court to make a record demonstrating the defendant's understanding that the plea results in the waiver of the applicable constitutional rights." Id. at 755-56. The court of appeals concluded that Hansen's plea colloquy was defective because it established only that Hansen had read and understood the form, but failed to establish that Hansen

22

"understood that by entering his no contest plea he was waiving his applicable constitutional rights." Id. at 756; see also State v. Hampton, 2004 WI 107, ¶¶14-17, 66-73, 274 Wis. 2d 379, 683 N.W.2d 14 (holding that circuit courts must specifically inquire as to whether defendants understand the circuit court is not bound by a plea agreement sentence recommendation, and that simply asking defendants whether they understand a waiver of rights form is not sufficient).

¶35 Since Moederndorfer and Hansen, this court has examined both cases and concluded that they exist in harmony, stating as follows:

> Moederndorfer does not support the position that so long as the circuit court ascertains that the defendant generally understands the Plea Questionnaire/Waiver of Rights Form, the contents of that Form may be viewed as intrinsic to the plea colloquy. The circuit court in Moederndorfer used substantive colloquy during the plea hearing to establish Moederndorfer's understanding of the information that Moederndorfer claimed on appeal not to understand. As the court of appeals explained in Hansen, the Moederndorfer decision is properly interpreted to mean that although use of the Plea Questionnaire/Waiver of Rights Form "lessen[s] the extent and degree of the colloquy otherwise required between the trial court and the defendant," the Form is "not intended to eliminate the need for the court to make a record demonstrating the defendant's understanding" of the particular information contained therein.

State v. Hoppe, 2009 WI 41, ¶¶42, 317 Wis. 2d 161, 765 N.W.2d 794.

¶36 A plea questionnaire is indeed a useful tool to supplement a plea colloquy, but it alone does not replace a plea

23

colloquy during which the circuit court must determine whether a plea is being made knowingly, intelligently, and voluntarily.

¶37 Contrary to Pegeese's position, we conclude that Moederndorfer informs our analysis and that the colloquy that occurred here is not defective. Like the circuit court in Moederndorfer, the circuit court here specifically asked Pegeese if he read and completed a waiver of rights form——in this case, Form CR-227——and also asked Pegeese if he understood the entirety of the form and if he had any questions about the form. Pegeese responded that he read and completed the form, that he understood all of it, and that he had no questions. The circuit court then asked Pegeese's counsel if he reviewed the form with Pegeese and if he believed Pegeese understood the form's contents. Pegeese's counsel responded affirmatively to both questions. Somewhat like Moederndorfer but unlike the circuit court in Hansen, after addressing Pegeese's attorney, the circuit court here directly asked Pegeese, "[D]o you understand the [c]onstitutional [r]ights you give up when you enter a plea today?" Pegeese responded affirmatively, and the circuit court followed up by asking if he had "[a]ny questions about those rights." Pegeese stated that he had no questions. This is similar to the circuit court asking Moederndorfer whether he read and understood each paragraph on the waiver of rights form, to which Moederndorfer responded that he had read and understood "each and every one." Moederndorfer, 141 Wis. 2d at 828 n.1. If anything, the circuit court here went further than the circuit court did in Moederndorfer, by expressly referencing the

24

"constitutional rights" in the form and asking Pegeese if he understood them. The circuit court in Moederndorfer referenced the waiver of rights form in more general terms.

¶38 Pegeese further asserts that the circuit court addressed his attorney and not him, when the circuit court asked of Pegeese's understanding of Form CR-227. He argues that the circuit court somehow disconnected the discussion of the form from the circuit court's follow-up questions regarding Pegeese's constitutional rights such that the colloquy was rendered defective. Pegeese specifically claims that "[a]ny person in Pegeese's shoes would have thought that by asking Pegeese's attorney about Pegeese's understanding of the questionnaire after asking Pegeese about the questionnaire, the circuit court was signaling that it was concluding its questions about the questionnaire and moving on to a new topic." We are unpersuaded. The circuit court's questions were intended to ascertain Pegeese's understanding of the contents of Form CR—227. That form lists each of the constitutional rights Pegeese waived and an "X" was placed next to each right so as to indicate his understanding. The circuit court then specifically asked Pegeese about whether he understood that he was waiving those constitutional rights. While circuit courts are to ensure that a plea is knowingly, intelligently, and voluntarily entered, there is no specific formula required to do so. Circuit courts are vested with the responsibility to communicate with the defendant and counsel to effectuate that purpose and if done, to then make the finding that a plea is indeed knowing,

intelligent, and voluntary. Plea forms such as Form CR-227 are tools to be utilized in that process.

¶39 We therefore reaffirm that the circuit court may utilize a waiver of rights form such as Form CR-227, but the use of that form does not otherwise eliminate the circuit court's plea colloquy duties. While the circuit court must exercise great care when conducting a plea colloquy so as to best ensure that a defendant is knowingly, intelligently, and voluntarily entering a plea, a formalistic recitation of the constitutional rights being waived is not required. State v. Imani, 2010 WI 66, ¶26, 326 Wis. 2d 179, 786 N.W.2d 40 (concluding that the circuit court's colloquy regarding a defendant's waiver of right to counsel was sufficient, and declining to "impose on circuit courts the requirement of placing form over substance and using 'magic words' when the reality of the circumstances dictate the answer").

¶40 To the extent Pegeese asserts that circuit courts must verify on the record that defendants understand each of the constitutional rights they waive when they enter a guilty or no contest plea, the record reflects that the circuit court here did so. As noted previously, the circuit court utilized a plea questionnaire form that specifically listed each constitutional right being waived. Pegeese stated that he understood each right and did not wish to further discuss the matter with his lawyer, and he indicated his understanding by checking off each right listed on the form. His counsel verified that he had consulted with Pegeese and that they went through the form

26

together.  Although the circuit court did not individually recite and specifically address each constitutional right on the record, the plea colloquy proceedings as a whole reflect that Pegeese understood the constitutional rights he was waiving.

¶41 Perhaps Pegeese's argument is more appropriately construed as seeking a formalistic requirement that circuit courts read, verbatim and on the record, each constitutional right defendants waive by entering a guilty or no contest plea. We decline to use our superintending and administrative authority under Article VII, section 3 of the Wisconsin Constitution, placing form over substance, in order to reach such a holding.[7]  Pegeese presents no authority, and indeed there is no indication that requiring the recitation of "magic words" already contained on a plea questionnaire form, on the record, would advance a defendant's understanding of the constitutional rights waived by pleading guilty or no contest. We instead look to the substance of the record as a whole to determine whether the circuit court sufficiently ensured that the defendant

---

[7] Article VII, section 3(1) of the Wisconsin Constitution states, "The supreme court shall have superintending and administrative authority over all courts."  While this court's superintending and administrative authority is "indefinite in character, unsupplied with means and instrumentalities, and limited only by the necessities of justice," this court does not use such power lightly. Arneson v. Jezwinski, 206 Wis. 2d 217, 225-26, 556 N.W.2d 721 (1996).

27

understood the constitutional rights waived by entering a guilty or no contest plea.[8]

¶42 Accordingly, we conclude that Pegeese has failed to meet his initial burden to show that the circuit court violated the requirements of Wis. Stat. § 971.08 or Bangert. Therefore, Pegeese is not entitled to a Bangert hearing. As a result, Pegeese is not entitled to withdraw his guilty plea.

### IV. CONCLUSION

¶43 The circuit court's colloquy with Pegeese verified that the constitutional rights at issue were contained in Form CR-227, that Pegeese completed and signed the form with counsel and that he wanted no further time to discuss matters with his lawyer. The colloquy further verified that Pegeese comprehended the contents of the form, and he and his lawyer acknowledged that he understood each constitutional right he was waiving by pleading guilty. The circuit court concluded that Pegeese was "freely, knowingly[,] and intelligently" entering his plea.

¶44 We conclude that Pegeese has not met his burden to demonstrate that the plea colloquy was defective so as to entitle him to the relief requested. We further decline to

---

[8] Though today we do not require circuit courts to recite any particular magic words when conducting a plea colloquy, circuit courts should be mindful of the suggested plea colloquy in Wis JI-Criminal SM-32 (2007). See Bangert, 131 Wis. 2d at 268 (stating that circuit courts can use Wis JI-Criminal SM-32 (1985) as one method of fulfilling the requirements under Bangert).

exercise our superintending authority to impose a specific requirement that at a plea hearing circuit courts must individually recite and specifically address each constitutional right being waived and then otherwise verify the defendant's understanding of each constitutional right being waived. Therefore, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶45 SHIRLEY S. ABRAHAMSON, J., withdrew from participation.

¶46 REBECCA FRANK DALLET, J. *(concurring).* I agree with the majority opinion that Javien Pegeese failed to demonstrate that the circuit court's plea colloquy was defective. However, I write separately because I urge this court to exercise its superintending authority, pursuant to Article VII, Section 3(1) of the Wisconsin Constitution, and prospectively require circuit courts to advise a defendant of each constitutional right being waived by pleading guilty. This court's superintending authority "endows this court with a power that is indefinite in character . . . and limited only by the necessities of justice." Arneson v. Jezwinski, 206 Wis. 2d 217, 225, 556 N.W.2d 721 (1996). It is in the interest of justice that a circuit court advise a defendant of each constitutional right being waived to ensure that his or her guilty plea is being entered knowingly, intelligently, and voluntarily.

¶47 When a defendant pleads guilty, he or she "simultaneously waives several constitutional rights, including [the] privilege against compulsory self-incrimination, [the] right to trial by jury, and [the] right to confront [his or her] accusers." McCarthy v. United States, 394 U.S. 459, 466 (1969). Even if defense counsel diligently reviews the Plea Questionnaire/Waiver of Rights form[1] with a defendant, a defendant may not understand each right. It is the duty of the circuit court, not defense counsel, to ascertain whether a defendant is knowingly, intelligently, and voluntarily waiving

---

[1] See Form CR-227. This form was adopted by the Judicial Conference pursuant to Wis. Stat. §§ 971.025 and 758.18(1).

1

each right. As explained by this court in State v. Bangert, 131 Wis. 2d 246, 272, 389 N.W. 12 (1986), "[i]t is incumbent upon the trial court to inform the defendant of his rights and ascertain that he understands they are being waived."

¶48 In Bangert, 131 Wis. 2d at 270-71, we exercised our supervisory powers to require circuit courts to "follow the provisions set forth in Wis. JI——Criminal SM-32 (1985), Part V, Waiver of Constitutional Rights, or specifically refer to some portion of the record or communication between defense counsel and defendant which affirmatively exhibits defendant's knowledge of the constitutional rights he will be waiving." As in Bangert, I reaffirm Special Materials 32 as the gold standard for conducting a plea colloquy.

¶49 Special Materials 32 illustrates a thorough plea colloquy.[2] The "Waiver of Constitutional Rights" portion reads as follows:

> By pleading guilty, you admit that you committed the crime and, thus, you relieve the state of proving at a trial that you committed the crime, and by pleading guilty you also waive——that is, you give up——important constitutional rights.
>
> First, you give up your right to have the state prove that you committed each element of the crime. The state must convince each member of the jury beyond a reasonable doubt that you committed the crime. Do you understand that?

---

[2] The current section of Special Materials 32 addressing a defendant's waiver of constitutional rights is nearly identical to the version referenced in State v. Bangert, 131 Wis. 2d 246, 271 n.5, 389 N.W. 12 (1986).

You have a constitutional right not to incriminate yourself, which means, you have a right not to admit to a crime, not to say anything that will subject you to a criminal penalty. By pleading guilty, you give up this privilege not to incriminate yourself, and if the court accepts your plea of guilty, you will be convicted, and the court can impose sentence against you. Do you understand that?

You have a constitutional right to confront your accusers, which means you have the right to face the witnesses against you, to hear their sworn testimony against you, and to cross-examine them by asking them questions to test the truth and accuracy of their testimony. If the court accepts your plea of guilty, you give up your right to confront your accusers. Do you understand that?

You have the right to present evidence in your own behalf and to require witnesses to come to court and testify for you. Do you understand that?

Knowing that by pleading guilty, you give up your constitutional right to a trial by jury, your constitutional right not to incriminate yourself, and your constitutional right to confront the witnesses against you and to subpoena witnesses, do you still wish to plead guilty?"

Wis JI——Criminal SM-32 (2007).

¶50 A requirement that a circuit court inform a defendant of each constitutional right being waived by pleading guilty does not put form over substance or require "magic words," as the majority opinion suggests. Majority op., ¶41. The Special Materials do not need to be read verbatim;[3] instead, a circuit court should verify that the defendant understands and agrees to waive each constitutional right implicated in entering a guilty

---

[3] The Special Materials note that the questions and statements are merely suggestions and that "judges will undoubtedly want to tailor them to the case at hand and develop others of their own." Wis JI——Criminal SM-32 (2007).

3

plea, as the Bangert court intended. The circuit court must be more than just "mindful" of the suggested plea colloquy in Special Materials 32, majority op., ¶41 n.8, it should attempt to encapsulate its thorough explanation of the waiver of rights.

¶51 The vast majority of states and the federal courts have recognized the importance of requiring a circuit court to advise a defendant of the constitutional rights being waived by pleading guilty to a felony. See Fed. R. Crim. P. 11(b)(1)(B)-(F). Some states implement this requirement pursuant to statute. See, e.g., Alaska R. Crim. P. 11; Ark. R. Crim. P. 24.4; Colo. R. Crim. P. 5(a)(2) & 11; Conn. Practice Book § 39-19; Del. Super. Ct. R. Crim. 11; Fla. R. Crim. P. 3.172; Il. S. Ct. Rule 402; Ind. Code Ann. § 35-35-1-2; I. C. A. Rule 2.8; La. Code Crim. Proc. Ann. art. 556.1; Me. R. U. Crim. P. 11; Mass. R. Crim. P. 12; Minn. R. Crim. P. 15.01; Miss. R. Crim. P. 15.3(d)(3); Mo. R. Crim. P. 24.02; N.C. Gen. Stat. Ann. § 15A-1022; N.D. R. Crim. P. 11; Ohio R. Crim. P. 11; O.R.S. § 135.385 (Oregon); S.D.C.L. § 23A-7-4; Tenn. R. Crim. P. 11; Vt. R. Crim. P. 11; W. Va. R. Crim. P. 11; Wyo. R. Crim. P. 11.

¶52 Other states implement this requirement pursuant to case law. See, e.g., People v. Cross, 347 P.3d 1130, 1132 (Cal. 2015) ("As a prophylactic measure, the court must inform the defendant of three constitutional rights——the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers——and solicit a personal waiver of each"); Edmonds v. Commonwealth of Ky., 189 S.W.3d 558, 565 (Ky. 2006); State v. Solomon, 111 P.3d 12 (Haw. 2005);

4

State ex rel. T.M., 765 A.2d 735, 739-740, 744 (N.J. 2001); State v. Garcia, 915 P.2d 300, 303 (N.M. 1996); State v. Anziana, 840 P.2d 550, 552 (Ct. App. Kan. 1992) (reading specific constitutional rights into statutory "consequences of [] plea" language); State v. Irish, 394 N.W.2d 879, 883 (Neb. 1986); State v. Levario, 577 P.2d 712, 713 (Ariz. 1978) (partly defining "constitutional rights" language in Ariz. R. Crim. P. 17.2); Commonwealth of Pa. v. Willis, 369 A.2d 1189 (Pa. 1977); King v. State, 553 P.2d 529, 534-35 (Okla. 1976) (requiring an advisement by the court as to the list of constitutional rights being waived).

¶53 A requirement that a circuit court advise a defendant of each constitutional right being waived by pleading guilty would respect the gravity of a defendant's decision to plead guilty and ensure that the decision is being made knowingly, intelligently, and voluntarily. Wisconsin should join the majority of jurisdictions from around the country and adopt this requirement.

¶54 Accordingly, I respectfully concur.

¶55 I am authorized to state that Justice ANN WALSH BRADLEY joins this concurrence.

5