**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**June 16, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP201-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CM218

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

NATHANIEL LEE MATTSON,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Douglas County:  GEORGE L. GLONEK, Judge.  *Affirmed*.

¶1     SEIDL, J.[1]  Nathaniel Mattson appeals a judgment of conviction, entered upon his guilty pleas, to one count of domestic battery and one count of disorderly conduct, and an order denying his postconviction motion for plea

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

withdrawal. Mattson contends his guilty pleas were not knowing, intelligent, and voluntary because he mistakenly believed that the decision to either take the State's plea offer or go to trial was a choice that belonged to his counsel and not to himself. We conclude the circuit court's refusal to allow his plea withdrawal did not result in manifest injustice. We therefore affirm.

## BACKGROUND

¶2      On May 2, 2017, a criminal complaint was filed in Douglas County case No. 2017CM218 charging Mattson with three counts of misdemeanor battery, one count of disorderly conduct, and one count of mistreating animals. The next day, an attorney was appointed to represent Mattson through the public defender's office. The State subsequently filed an amended complaint, modifying four of the counts to include the domestic abuse penalty enhancer under WIS. STAT. § 968.075(1)(a), and leaving the count of mistreating animals as previously charged.

¶3      Mattson independently retained attorney Stephen Zuber on June 26, 2017, and Mattson's public defender's motion to withdraw was granted a few days later. Zuber had previously represented Mattson in Douglas County case No. 2011CF322. Pursuant to a plea agreement in that case, Mattson pleaded guilty to one count of third-degree sexual assault and one count of sexual intercourse with a child age sixteen or older. The circuit court deferred entry of the judgment on the first count, and on the second count, the court withheld sentence and placed Mattson on probation.

¶4      In the instant case, Mattson intended to enter guilty pleas pursuant to a plea agreement. Prior to an April 16, 2018 hearing, Mattson signed a Plea Questionnaire/Waiver of Rights form. Among other things, the form stated

2

Mattson was twenty-nine years old; had completed eleven years of schooling; understood English; understood the charges to which he was pleading; was currently receiving treatment for attention-deficit hyperactivity disorder, depression, and anxiety; and had not consumed any alcohol or drugs within the past twenty-four hours, but had taken medication for obsessive-compulsive disorder. The form also stated that Mattson would be giving up specific constitutional rights by pleading guilty, and Mattson checked a box next to each constitutional right listed confirming that he was giving up that right of his own free will.

¶5 At the beginning of the April 16 hearing, the State and Zuber summarized the plea agreement for the circuit court. Mattson would plead guilty or no contest to one count of domestic battery and one count of disorderly conduct, with both counts including domestic abuse enhancers. Mattson would also stipulate that the court should grant the State's motion to terminate the deferred judgment agreement in case No. 2011CF322, based upon his pleas in the instant case. In exchange, the State would recommend in case No. 2017CM218 dismissal of the remaining counts and that Mattson be placed on probation for two years.

¶6 The circuit court then engaged Mattson in a colloquy regarding his pleas.[2] The court confirmed that Mattson had signed the Plea Questionnaire/Waiver of Rights form, had read through the form before signing it, and understood its contents.

---

[2] We omit parts of this colloquy that are irrelevant to the issues Mattson raises on appeal.

3

¶7 The circuit court also confirmed that Mattson understood he was giving up certain constitutional rights by pleading guilty. Specifically, the court explained that if Mattson were to plead not guilty, "the State would have the burden to prove you guilty by evidence beyond a reasonable doubt. They would need to convince a jury of your peers that you were guilty, and those 12 persons would need to reach a unanimous verdict in finding you guilty." Mattson affirmed that he understood he was giving up those rights. He also affirmed he understood that if his case proceeded to trial, he would have the right to testify on his own behalf. Additionally, the court asked Mattson if anyone made any promises or threats in order to have him give up his constitutional rights and enter guilty pleas. Mattson replied, "No."

¶8 The circuit court accepted Mattson's guilty pleas to the two counts, concluding the pleas were "freely, voluntarily, and intelligently made." The court dismissed but read in the remaining counts, and it then withheld Mattson's sentence on each count and placed him on probation for two years consistent with the plea agreement and the State's recommendation.

¶9 On May 7, 2018, less than one month after Mattson pleaded guilty, Zuber moved to withdraw as Mattson's counsel on the basis that Mattson had expressed dissatisfaction with Zuber's representation. The circuit court granted the motion. That same day, attorney Adam Nero filed a notice of intent to pursue postconviction relief on Mattson's behalf.

¶10 Mattson subsequently moved for postconviction relief, asserting that his pleas were not entered knowingly, intelligently, and voluntarily. He further alleged that Zuber provided ineffective assistance because Mattson did not understand that the decision either to accept the State's plea offer or to go to trial

4

was exclusively his, rather than Zuber's, to make. Mattson claimed he believed that Zuber did not want to try his case, and Mattson therefore agreed to the State's plea offer because, although he wanted his case to go to trial, Zuber did not.

¶11 The circuit court held a hearing on Mattson's postconviction motion, at which both Mattson and Zuber testified. Mattson testified that he, his mother, and his sister met with Zuber at his office three days prior to the plea hearing. Mattson further testified that his sister secretly recorded the meeting. The court received into evidence both the recording and a transcript of that recording prepared by Nero's office.

¶12 Mattson testified that he switched from his public defender to Zuber because he wanted someone to better assist him and because Mattson had a pre-existing relationship with Zuber. Mattson stated that he did not want to plead guilty. He testified, however, that he did not believe he had a choice concerning the decision to plead guilty based on his conversation with Zuber at their pre-plea hearing meeting. Thus, Mattson stated he felt that it was Zuber's decision whether to go to trial or to take the plea offer. On cross-examination, however, the State asked Mattson, "Why … would Mr. Zuber be badgering you to take a deal if it was his decision anyway?" Mattson replied, "I don't know."

¶13 The State also questioned Mattson regarding the inconsistencies between his testimony and his written responses on the Plea Questionnaire/Waiver of Rights form. Mattson testified he either never reviewed the form or could not remember reviewing it with Zuber prior to pleading guilty despite the fact that Mattson signed the form signifying that he had reviewed it with Zuber and had answered all the questions truthfully.

¶14    Zuber testified he had practiced law since 1990 and estimated that ninety-five percent of his practice is in criminal defense. Zuber stated that he helped Mattson complete the Plea Questionnaire/Waiver of Rights form. Zuber further testified he never told Mattson that it was Zuber's decision, and not Mattson's, to go to trial. Zuber stated he had "no reason" to doubt whether Mattson was competent, but he conceded, "I did have reason to believe that his … intelligence was not average. I believed it to be below that of an average individual based upon his infirmities, and again, I was well aware of them from my prior representation …." Nevertheless, Zuber testified he had no concern regarding whether Mattson would be able to knowingly, intelligently, or voluntarily enter a plea:

> I had no knowledge to that effect that I recall. If I would have, I would not have gone forward and had a plea questionnaire prepared. I met with Mr. Mattson, again, prior to the hearing outside of the courtroom on the date he pled, and, again, I went through his rights with him outside of the elevator on this floor.

¶15    The circuit court denied Mattson's motion for plea withdrawal. It found not credible Mattson's "claims that he did not wish to plead guilty and be placed on probation … but that he did so because Attorney Zuber did not want to go to trial and seemingly directed [Mattson] to enter his guilty pleas." The court also found not credible Mattson's testimony that "he did not understand that the decision as to whether to proceed to trial was his decision to make (and not Attorney Zuber's)," and that Mattson "did not feel as though he had a choice in the matter."

¶16    Based on the foregoing, the circuit court concluded that Mattson entered his guilty pleas knowingly, intelligently, and voluntarily. It also concluded Zuber "was not deficient in his representation" of Mattson, as the court

was "not convinced that Attorney Zuber somehow improperly induced or coerced [Mattson] to enter his pleas." Mattson now appeals. Additional facts are discussed below.

## DISCUSSION

¶17 On appeal, Mattson argues the circuit court erred by determining that he was not entitled to withdraw his guilty pleas postconviction. He does not renew, as an independent ground for relief, his postconviction argument asserting that Zuber provided ineffective assistance.[3]

¶18 When a defendant seeks to withdraw a guilty plea after sentencing, he or she must prove, by clear and convincing evidence, that a refusal to allow plea withdrawal would result in "manifest injustice." *State v. Cajujuan Pegeese*, 2019 WI 60, ¶24, 387 Wis. 2d 119, 928 N.W.2d 590; *see also* *State v. Denk*, 2008 WI 130, ¶¶22-23, 31, 315 Wis. 2d 5, 758 N.W.2d 775 (using the "manifest injustice" postsentencing standard for plea withdrawal when a circuit court withheld a defendant's sentence and placed the defendant on probation). Manifest injustice can occur when a defendant received ineffective assistance of counsel, or when his or her pleas were not knowing, intelligent, and voluntary. *Cajujuan Pegeese*, 387 Wis. 2d 119, ¶25. Whether manifest injustice occurred under either of those circumstances is a question of constitutional fact that this court reviews de novo. *State v. Taylor*, 2013 WI 34, ¶25, 347 Wis. 2d 30, 829 N.W.2d 482. However, we accept the circuit court's findings of historical or evidentiary fact unless they are clearly erroneous. *Id.*

---

[3] Although Mattson is no longer claiming Zuber provided ineffective assistance, he does argue Zuber's conduct provides extrinsic evidence supporting his plea withdrawal claim.

¶19 Mattson's argument essentially merges two circumstances in which manifest injustice may occur into one. He contends his guilty pleas were not knowing, intelligent, or voluntary because the plea colloquy was "perfunctory" and because of Zuber's pre-plea conduct. In other words, Mattson argues he is entitled to plea withdrawal both because the plea colloquy was defective and based on factors extrinsic to the plea colloquy.

¶20 There are two methods by which courts typically review motions to withdraw guilty pleas after judgment and sentence. *State v. Negrete*, 2012 WI 92, ¶16, 343 Wis. 2d 1, 819 N.W.2d 749. One method, based on *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), applies when the defendant's motion alleges defects in the plea colloquy. *See State v. Hoppe*, 2009 WI 41, ¶3, 317 Wis. 2d 161, 765 N.W.2d 794. The other method, based on *Nelson v. State*, 54 Wis. 2d 489, 195 N.W.2d 629 (1972), and *State v. Bentley*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996), applies when the defendant seeks plea withdrawal based on factors extrinsic to the plea colloquy. *See Hoppe*, 317 Wis. 2d 161, ¶3. The method used to review whether a defendant is entitled to withdraw a guilty plea after sentencing is important because there are "several" distinctions between the *Bangert* approach and the *Nelson*/*Bentley* approach. *See State v. Hampton*, 2004 WI 107, ¶¶57-65, 274 Wis. 2d 379, 683 N.W.2d 14.

¶21 Different parties have the burden of proof at the evidentiary hearing once the defendant has made the initial showing of a prima facie case for an evidentiary hearing. *Id.*, ¶¶62-63. In *Bangert*-type cases involving allegedly defective plea colloquies, "the burden shifts to the state to show by clear and convincing evidence" that the defendant's plea was knowingly, intelligently, and voluntarily entered. *Id.*, ¶62. In *Bentley*-type cases, where the plea colloquy was sufficient but the defendant asserts that factors extrinsic to the colloquy rendered

the plea invalid, the defendant "has the burden of proving all the elements of the alleged error, such as deficient performance and prejudice" for ineffective assistance claims. *Id.*, ¶63. "The defendant must prove the linkage between his [or her] plea and the purported defect. The defendant's proof must add up to manifest injustice." *Id.*

¶22    Although Mattson argues he is entitled to plea withdrawal both because the plea colloquy was defective and based on factors extrinsic to the plea colloquy, he relies upon only the *Bangert* approach in his arguments. He does not develop any independent argument under the *Nelson*/*Bentley* approach, much less cites to *Bentley*-type cases in support of any argument that manifest injustice occurred based on factors outside of the plea colloquy. Despite this omission, however, he relies on extrinsic factors to support his appellate arguments that he is entitled to plea withdrawal under the *Bangert* burden-shifting approach. Because Mattson does not develop any argument asserting he is entitled to plea withdrawal under *Nelson*/*Bentley*, we must analyze Mattson's arguments using the *Bangert* approach, and we therefore primarily confine our discussion only to Mattson's arguments regarding whether the plea colloquy was defective.

¶23    A defendant moving for plea withdrawal pursuant to *Bangert* must: "(1) make a prima facie showing of a violation of WIS. STAT. § 971.08 or other court-mandated duty"; and (2) "allege that [he or she] did not, in fact, know or understand the information that should have been provided during the plea colloquy." *Cajujuan Pegeese*, 387 Wis. 2d 119, ¶26. Whether a defendant has made a prima facie showing that the plea colloquy was deficient is a question of law that this court reviews independent of the circuit court. *Id.*, ¶17.

9

¶24 Here, the circuit court did not explicitly determine whether Mattson made a prima facie showing that the plea colloquy was defective. The court instead simply proceeded to an evidentiary hearing. On appeal, Mattson argues he established a prima facie case that the plea colloquy was defective because the transcript of the plea colloquy demonstrates that the court did not ensure that Mattson knew it was his choice alone either to accept the State's plea offer or go to trial.

¶25 We conclude that Mattson did not demonstrate the plea colloquy was defective because the circuit court was not required specifically to inform him that it was his decision alone either to accept the State's plea offer or go to trial. In order to ensure that a defendant's guilty or no-contest plea is knowing, intelligent, and voluntary, our supreme court mandates that circuit courts conduct a colloquy addressing a number of items. *See id.*, ¶23. As relevant to the issues Mattson raises on appeal, the colloquy must "assess the defendant's capacity to understand the issues at the hearing"; "[a]scertain whether any promises, agreements, or threats were made in connection with the defendant's anticipated plea"; "[e]stablish the defendant's understanding of the nature of the crime with which he [or she] is charged and the range of punishments to which he [or she] is subjecting himself [or herself] by entering a plea"; and "[i]nform the defendant of the constitutional rights he [or she] waives by entering a plea and verify that the defendant understands he [or she] is giving up these rights." ***Id.*** (citation omitted).

¶26 Our supreme court has not mandated, nor is it required under WIS. STAT. § 971.08, that a circuit court ensure as part of the plea colloquy a defendant understands that it is his or her exclusive decision either to take a plea offer or go to trial. The closest any such requirement comes in this regard is that of the court ascertaining whether any promises, agreements, or threats were made in

connection with the defendant's anticipated plea. That inquiry occurred here. Thus, Mattson cannot demonstrate manifest injustice because he is not entitled to plea withdrawal under *Bangert*.

¶27 Our analysis could end here. However, given that the circuit court held an evidentiary hearing, as required by *Bangert*, had Mattson made his prima facie case, and because both parties' appellate arguments primarily address whether the State met its burden of proof at *Bangert*'s next step, we continue our analysis.

¶28 At a *Bangert* evidentiary hearing, the State has the burden to prove, by clear and convincing evidence, that the defendant's plea was knowing, intelligent, and voluntary despite any defects in the plea colloquy. *Cajujuan Pegeese*, 387 Wis. 2d 119, ¶27. The State may rely upon evidence outside the plea hearing transcript to meet its burden of proof. *Hoppe*, 317 Wis. 2d 161, ¶47. This evidence includes the testimony at the evidentiary hearing from both the defendant and his or her trial counsel, as well as other recorded statements. *Id.* The State can also rely on a Plea Questionnaire/Waiver of Rights form because it is a "useful tool to supplement a plea colloquy." *Cajujuan Pegeese*, 387 Wis. 2d 119, ¶36.

¶29 We conclude the State proved, by clear and convincing evidence, that Mattson's pleas were knowing, intelligent, and voluntary. First, the plea colloquy and the Plea Questionnaire/Waiver of Rights form support a determination that Mattson understood the choice to plead was his alone. Zuber testified that he went over the form, the charges, and the plea offer with Mattson before Mattson entered his pleas. The circuit court found Zuber's testimony credible and rejected Mattson's testimony that he either never reviewed the form

or did not remember reviewing it. The circuit court, sitting as fact finder, is the ultimate arbiter of witnesses' credibility. *See **State v. Peppertree Resort Villas, Inc.**, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345.

¶30 The circuit court also confirmed at the plea hearing that Mattson had signed the Plea Questionnaire/Waiver of Rights form, that he had read the form before signing it, and that he understood its contents. Boxes are checked on the form indicating that, by entering his pleas, Mattson would be giving up certain constitutional rights that were personal to him. Notably, boxes are checked indicating "*I* give up *my* right to a trial" and "*I* give up *my* right to make the State prove me guilty beyond a reasonable doubt." (Emphases added.) Further, by signing the form, Mattson confirmed that he answered all of the questions truthfully and agreed with the statement on the form providing, "I understand the rights that have been checked and *give them up of my own free will*." (Emphasis added.) And, as noted above, the court asked Mattson if anyone made any promises or threats in order to have him give up his constitutional rights and enter guilty pleas, and Mattson replied, "No."

¶31 On this record, the State met its burden to prove, by clear and convincing evidence, that Mattson's pleas were entered knowingly, intelligently, and voluntarily.[4] Consequently, the circuit court's refusal to allow Mattson to withdraw his plea did not result in manifest injustice.

---

[4] In its response brief, the State cites to a per curiam opinion of this court—***State v. White***, No. 2014AP1407, unpublished slip op. (WI App Jan. 27, 2015). While we recognize that the circuit court itself cited to this case in its decision on Mattson's postconviction motion and that ***White*** involved our review of a decision by the same circuit court, we remind the State that its citation to ***White*** is not permitted in appellate briefing. *See* WIS. STAT. RULE 809.23(3).

¶32    Finally, we observe that both parties address at length Zuber's conduct and statements at a pre-plea meeting between him and Mattson. Mattson alleges that the reason he did not understand the decision either to accept the State's plea offer or to go to trial was exclusively his was because Zuber coerced or "bullied" him into accepting the plea offer. Had Zuber not done so, Mattson maintains that he would have pursued his right to a trial.

¶33    The circuit court rejected Mattson's argument. The court made factual findings and credibility determinations of Zuber's and Mattson's testimony regarding that meeting after it listened to a recording and read a transcript of the meeting. Having done so, the court concluded that the recorded meeting did not establish that Zuber "pressured or bullied [Mattson] into entering his guilty pleas in Court three days later." Notably, when Mattson was asked at the plea hearing if anyone made any "threats"—such as coercion or bullying—in order to have him give up his constitutional rights and enter guilty pleas, Mattson replied, "No."

¶34    We decline to address Mattson's arguments that he is entitled to plea withdrawal due to Zuber's statements and conduct at the recorded pre-plea meeting because its recording, its transcript, and any testimony regarding what occurred at that meeting all are evidence extrinsic to the plea colloquy. Any argument relying on this extrinsic evidence as a basis for postconviction plea withdrawal must be brought pursuant to *Nelson/Bentley*, for the reasons previously discussed. *See Hoppe*, 317 Wis. 2d 161, ¶3. Because Mattson unquestionably fails to argue he is entitled to plea withdrawal using the *Nelson*/*Bentley* approach, we decline to opine on the merits of his arguments asserting manifest injustice occurred based on factors extrinsic to the plea colloquy.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.