COURT OF APPEALS
DECISION
DATED AND FILED

October 11, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP698-CR**

Cir. Ct. No. **2019CF48**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JACCOB P. PATE,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Brown County: KENDALL M. KELLEY, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jaccob P. Pate appeals from a judgment, entered upon his no-contest pleas, convicting him of two counts of armed robbery. He also appeals from the circuit court's order denying his motion for postconviction

relief. Pate argues that he is entitled to plea withdrawal because the court's defective plea colloquy rendered his pleas unknowing, unintelligent, and involuntary. For the reasons discussed below, we affirm the judgment and order.

## BACKGROUND

¶2 In January 2019, Pate robbed both a liquor store and a gas station while armed. He also attempted to rob a second gas station. Pate ultimately confessed to the crimes, admitting that he committed the robberies and used a gun "for the means of getting money." The State charged Pate with two counts of armed robbery and one count of attempted armed robbery.

¶3 Pate later pled no contest to the two counts of armed robbery. The attempt charge was dismissed and read in at sentencing. Before entering his pleas, Pate reviewed and signed a completed Plea Questionnaire/Waiver of Rights form (hereinafter, plea questionnaire), which the circuit court referenced during its plea colloquy. We will address the details of the court's colloquy below. The court accepted Pate's no-contest pleas, and it later sentenced Pate to consecutive terms of four years' initial confinement followed by eight years' extended supervision on each count.

¶4 Postconviction, Pate sought to withdraw his plea, arguing that the circuit court's plea colloquy was defective under WIS. STAT. § 971.08 (2021-22),[1] and under the burden-shifting procedure set forth in *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986). Pate first argued that the court's colloquy was

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

2

deficient because the court failed to explain the elements of the offenses to which Pate was pleading. He claimed the court, instead, over-relied on the plea questionnaire as a substitute for an in-person colloquy. Further, Pate alleged that the plea questionnaire did not include a verbatim presentation of the elements of armed robbery. As a result of these deficiencies, Pate asserted that he did not know and understand the elements of the crimes. Therefore, Pate proclaimed that he had met his initial burden and that the burden shifted to the State to prove, by clear and convincing evidence, that his pleas were knowing, intelligent, and voluntary.

¶5 The circuit court held a nonevidentiary hearing on Pate's motion. On the record and after hearing the parties' arguments, the court denied the motion. The court determined that there was nothing in the record demonstrating that it had overlooked any of the legal requirements for a plea colloquy and that it was satisfied, based on the record, that Pate's pleas were knowingly, intelligently, and voluntarily entered. The court subsequently entered a written order denying Pate's motion. Pate appeals.

## DISCUSSION

¶6 "When a defendant seeks to withdraw a guilty plea after sentencing, he [or she] must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in 'manifest injustice.'" *State v. Taylor*, 2013 WI 34, ¶24, 347 Wis. 2d 30, 829 N.W.2d 482 (quoting *State v. Brown*, 2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906). "One way the defendant can show manifest injustice is to prove that his [or her] plea was not entered knowingly, intelligently, and voluntarily." *Id.* (citing *Brown*, 293 Wis. 2d 594, ¶18).

3

¶7    When the circuit court accepts a defendant's plea, the court must address the defendant personally and fulfill several duties under WIS. STAT. § 971.08 and *Bangert*, including "[e]stablish[ing] the defendant's understanding of the nature of the crime with which he [or she] is charged and the range of punishments to which he [or she] is subjecting [her or] himself by entering a plea." *Brown*, 293 Wis. 2d 594, ¶¶5, 35.  As noted, Pate moved to withdraw his plea based on a claimed error within the plea colloquy itself—in other words, pursuant to *Bangert*'s burden-shifting framework.  *See Bangert*, 131 Wis. 2d at 274; *State v. Pegeese*, 2019 WI 60, ¶26, 387 Wis. 2d 119, 928 N.W.2d 590.

¶8    Under that framework, the defendant must:  (1) make a prima facie showing of a violation of WIS. STAT. § 971.08, or another court-mandated duty; and (2) "allege that the defendant did not, in fact, know or understand the information that should have been provided during the plea colloquy." *Pegeese*, 387 Wis. 2d 119, ¶26 (citing *Bangert*, 131 Wis. 2d at 274).  "In order to make a prima facie showing, the defendant may not rely on conclusory allegations"; instead, he or she "'must point to deficiencies in the plea hearing transcript' to meet his [or her] initial burden." *Id.*, ¶26 (citation omitted).  If the defendant fails to make a prima facie showing, the circuit court must deny the defendant's motion. *Id.*

¶9    "When a defendant successfully meets both prongs, then that defendant is entitled to an evidentiary hearing, also known as a '*Bangert* hearing.'" *Pegeese*, 387 Wis. 2d 119, ¶27.  At that hearing, "the burden of proof shifts to the State to show 'by clear and convincing evidence that the defendant's plea, despite the inadequacy of the plea colloquy, was knowing, intelligent, and voluntary.'" *Id.* (citation omitted).  To do so, "[t]he State may use 'any evidence' to prove that the defendant's plea was knowing, intelligent, and voluntary,

including any documents in the record and testimony of the defendant or defendant's counsel." *Id.* (alteration in original; citation omitted). If the State fails to meet its burden, then the defendant may withdraw his or her plea. *Id.*

¶10 Whether a plea is knowing, intelligent, and voluntary is a question of constitutional fact. *Brown*, 293 Wis. 2d 594, ¶19. We will "accept the circuit court's findings of historical and evidentiary facts unless they are clearly erroneous but we determine independently whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary." *Id.*

¶11 Thus, our role on appeal is to determine whether the circuit court's plea colloquy was legally sufficient and, if not, whether the State met its burden to prove that Pate's plea was knowing, intelligent, and voluntary. For the reasons that follow, we conclude that Pate failed to demonstrate that the court's plea colloquy was deficient; therefore, we do not reach the issue of whether the State met its burden.

¶12 On appeal, Pate argues that the circuit court's plea colloquy was deficient because it omitted an explanation of the elements of armed robbery and thereby failed to ensure that Pate knew and understood the elements of that offense. Further, Pate claims that the court's reliance on the plea questionnaire went beyond what is allowed under the case law, which resulted in the plea questionnaire being used as a substitute for a substantive plea colloquy, an error compounded by the fact that the form was not clear or comprehensive in its presentation of the elements of the crimes with which Pate was charged.

¶13 The State counters that it was not the circuit court's responsibility to "explain the elements of the offense." Rather, the court could, as it did in this case, "refer to a document signed by the defendant that includes the elements."

5

*See Brown*, 293 Wis. 2d 594, ¶¶48, 56. In sum, the State claims that Pate's plea colloquy "fits comfortably" within the case law because the court "utilized the plea questionnaire, referenced the information that should have been provided (both generally and specifically), and ascertained the defendant's understanding of that information."

¶14    In ***Bangert***, our supreme court stated that circuit courts must "establish a record showing the defendant's understanding of the charge," which includes "an awareness of the essential elements of the crime." ***Bangert***, 131 Wis. 2d at 267. The ***Bangert*** court explained that a circuit court may establish the defendant's understanding of the charges to which he or she is pleading by one, or a combination, of three nonexhaustive methods: (1) summarizing the elements by reading from the jury instructions or statute; (2) asking "defendant's counsel whether he [or she] explained the nature of the charge to the defendant and request[ing] him [or her] to summarize the extent of the explanation, including a reiteration of the elements, at the plea hearing"; and (3) referencing "the record or other evidence of defendant's knowledge of the nature of the charge established prior to the plea hearing," including a "signed statement of the defendant which might demonstrate that the defendant has notice of the nature of the charge." *See Brown*, 293 Wis. 2d 594, ¶¶46-48 (formatting altered) (citing ***Bangert***, 131 Wis. 2d at 268).

¶15    As the parties agree and our case law makes clear, "there is no specific formula required" to ensure a knowing, intelligent, and voluntary plea. *See, e.g.*, ***Pegeese***, 387 Wis. 2d 119, ¶38; ***State v. Hoppe***, 2009 WI 41, ¶32, 317 Wis. 2d 161, 765 N.W.2d 794; ***Bangert***, 131 Wis. 2d at 267. Instead, we may look to case law to provide guidance on how we determine that a proper plea colloquy was conducted. To make that determination, the parties identify four

6

relevant cases: *State v. Moederndorfer*, 141 Wis. 2d 823, 825, 416 N.W.2d 627 (Ct. App. 1987); *State v. Hansen*, 168 Wis. 2d 749, 755-56, 485 N.W.2d 74 (Ct. App. 1992); *Hoppe*; and *Pegeese*.

¶16    In *Moederndorfer*, the circuit court utilized the defendant, Moederndorfer's, waiver of rights form during the plea colloquy, and Moederndorfer affirmed that he had read the form, he understood the form, and his attorney had assisted him in understanding the form. *Moederndorfer*, 141 Wis. 2d at 827-28 & n.1.  The court also asked if the defendant had signed and initialed the form, if he had read each of the paragraphs, and if he understood the paragraphs before he initialed them; Moederndorfer agreed. *Id.* at 828 n.1.  After the court denied Moederndorfer's plea withdrawal motion, this court affirmed. *Id.* at 825-26.  We rejected the argument that the circuit court improperly relied upon the waiver of rights form, explaining:

> A trial court can accurately assess a defendant's understanding of what he or she has read by making a record that the defendant had sufficient time prior to the hearing to review the form, had an opportunity to discuss the form with counsel, had read each paragraph, and had understood each one.

*Id.* at 828.

¶17    Years later, in *Hansen*, this court clarified the *Moederndorfer* decision, explaining that circuit courts may not rely entirely on the plea questionnaire and waiver of rights form in a plea colloquy.  We explained that while the *Moederndorfer* decision "certainly lessened the extent and degree of the colloquy otherwise required between the trial court and the defendant, it was not intended to eliminate the need for the court to make a record demonstrating the defendant's understanding that the plea results in the waiver of the applicable

constitutional rights." ***Hansen***, 168 Wis. 2d at 755-56. Hansen's plea colloquy was found defective because it established only that Hansen had read and understood the form, rather than establishing that Hansen "understood that by entering his no contest plea he was waiving his applicable constitutional rights." ***Id.*** at 756. We explained:

> Here, [the court's] personal colloquy with Hansen did not include any discussion as to the constitutional rights which Hansen was waiving. Instead, the colloquy was limited to whether Hansen had gone over the ***Moederndorfer*** form with his attorney before he signed it and whether Hansen understood the form. We conclude that such limited personal colloquy is not the *substantive* kind of personal exchange between the trial court and the defendant which ***Bangert***, [WIS. STAT. §] 971.08, and ***Moederndorfer*** require.

***Hansen***, 168 Wis. 2d at 755.

¶18     Then in ***Hoppe***, like in ***Hansen***, the circuit court "invoked the Plea Questionnaire/Waiver of Rights Form, ascertained that the defendant's counsel had helped the defendant to review the Form, and further ascertained that the defendant generally understood the Form's contents," which amounted to "little more than incorporat[ing] the … Form into the plea colloquy." ***Hoppe***, 317 Wis. 2d 161, ¶26. Accordingly, because the "plea colloquy cannot … be reduced to determining whether the defendant has read and filled out" the plea questionnaire, our supreme court concluded there had been a ***Bangert*** violation. ***Hoppe***, 317 Wis. 2d 161, ¶¶32-34. In particular, the court noted that the plea hearing transcript was devoid of a discussion concerning "promises or threats made in connection with the defendant's plea or any statements relating to the range of punishments to which the defendant subjected himself by entering his plea." ***Id.***, ¶34.

¶19 Finally, in *Pegeese*, the circuit court "specifically asked Pegeese if he read and completed a waiver of rights form … and also asked Pegeese if he understood the entirety of the form and if he had any questions about the form." *Pegeese*, 387 Wis. 2d 119, ¶37. The court also asked Pegeese's defense counsel if he reviewed the form with Pegeese and if counsel believed that Pegeese understood the form's contents. *Id.* The court then specifically inquired about whether Pegeese understood the constitutional rights he was waiving by pleading guilty. *Id.* Our supreme court held there was no *Bangert* violation because the circuit court "went further than the circuit court did in *Moederndorfer*, by expressly referencing the 'constitutional rights' in the form and asking Pegeese if he understood them." *Pegeese*, 387 Wis. 2d 119, ¶37. The court observed, "The circuit court in *Moederndorfer* referenced the waiver of rights form in more general terms." *Pegeese*, 387 Wis. 2d 119, ¶37.

¶20 According to Pate, the "parties' main disagreement is whether the court over-relied on the plea form to satisfy its plea-taking responsibilities." As such, Pate argues that his case is closer to *Hansen* and *Hoppe* than to *Moederndorfer* and *Pegeese*. We disagree. This is a close case, but under the circumstances, we conclude that the circuit court's plea colloquy went beyond merely confirming that Pate generally understood the contents of the plea questionnaire. Accordingly, the facts in this case are closer to the facts in *Moederndorfer* and *Pegeese* than those in *Hansen* and *Hoppe*. In short, we conclude the colloquy here is similar to the colloquies approved by our case law.

¶21 At Pate's plea hearing, the circuit court used Pate's plea questionnaire as a tool during its substantive plea colloquy. The court first confirmed that Pate reviewed the form with defense counsel before signing it and asked whether counsel "explain[ed] everything on the form to you in a way that

you were able to understand." Pate agreed. Then the court asked whether it could "accept the entire document verbatim into the record just as though you and I went through the entire document line by line" and further affirmed that "if we went through the entire document line by line," Pate would agree that he "understand[s] each line on the page and that [he] agree[s] with it in the way that it has been filled out." Pate answered "yes" to both questions.

¶22 The circuit court then addressed the elements of the crimes with Pate, including whether defense counsel explained the elements and whether Pate could apply his understanding of the elements to his case:

> THE COURT: So Mr. Pate, getting back to this, you've indicated I can accept the entire packet now verbatim into the record. Did your attorney explain to you each of the elements that the [S]tate would have to prove beyond a reasonable doubt before you could be convicted in Count 1 of armed robbery.
>
> [Pate]: Yes, your Honor.
>
> THE COURT: Did he also explain to you each of the elements that the [S]tate would have to prove beyond a reasonable doubt before you could be convicted in Count 2 of armed robbery.
>
> [Pate]: Yes, your Honor.
>
> THE COURT: And do you believe that if we went forward to a trial in this matter, that the [S]tate would be successful in proving each of the elements of armed robbery beyond a reasonable doubt during that trial?
>
> [Pate]: Yes, your Honor.

¶23 The circuit court further addressed the constitutional rights Pate was waiving by pleading no contest, whether anyone had threatened him or promised him anything in connection with his pleas, and that the court was not bound by the parties' sentencing recommendations. Pate affirmed that he had enough time to discuss the case with defense counsel and that there was nothing discussed that he

did not understand. The court also inquired: "And if I were to ask you to tell me in your own words why you believe you're guilty of each of those offenses, would you tell me the same basic facts as are contained within the Criminal Complaint that relate to those counts[?]" Pate agreed. Finally, the court asked defense counsel if he believed Pate was knowingly, intelligently, and voluntarily entering his pleas. Counsel confirmed that to be the case.

¶24 The circuit court's colloquy was sufficient, albeit marginally so. The court affirmed with Pate that defense counsel had gone over the plea questionnaire with him and that Pate understood the information in the form. But the court also went a step further. It confirmed with Pate that it could "accept the entire document verbatim into the record just as though you and I went through the entire document line by line" and that Pate would agree "that [he] understand[s] each line on the page and that [he] agree[s] with it in the way that it has been filled out." We agree with the State that the court's colloquy here is similar to the colloquy approved in *Moederndorfer*, where the court referenced the constitutional rights the defendant was waiving by generally asking whether he read and understood each paragraph on the plea questionnaire without specifically identifying or reading each one. *See Moederndorfer*, 141 Wis. 2d at 828 & n.1; *see also Pegeese*, 387 Wis. 2d 119, ¶37 (discussing *Moederndorfer*). In that way, the court went beyond confirming only that Pate generally understood the plea questionnaire.

¶25 As to the elements of the offenses, the plea questionnaire, signed by Pate, specifically lists the essential elements of armed robbery under WIS JI—

11

CRIMINAL 1480 (2016).[2] *See* WIS. STAT. § 943.32(2). The circuit court referenced "the elements that the [S]tate would have to prove beyond a reasonable doubt" for both counts of armed robbery and asked Pate whether his defense counsel had explained those elements to him. While the court did not then specifically ask Pate whether Pate *understood* those elements, *see Pegeese*, 387 Wis. 2d 119, ¶37, we agree with the State that the court "arguably went further … by asking Pate to apply his understanding of the elements to the facts of his case." The court asked, "And do you believe that if we went forward to a trial in this matter, that the [S]tate would be successful in proving each of the elements of armed robbery beyond a reasonable doubt during that trial?" Pate agreed.

¶26 To the extent Pate argues that some notation by the defendant—such as initials or a checkmark—on the plea questionnaire is required where the circuit court generally refers to the contents of the form, *see Pegeese*, 387 Wis. 2d 119, ¶¶6, 30, 38 (citing *Moederndorfer*, 141 Wis. 2d at 831), we disagree that the case law supports such a requirement. Pate is correct that it does not appear that there were any obvious notations on the plea questionnaire—save for a lone handwritten

---

[2] Pate's plea questionnaire states:

> I understand that the crime(s) to which I am pleading has/have elements that the State would have to prove beyond a reasonable doubt if I had a trial. These elements have been explained to me by my attorney or are as follows:
>
> (1) The defendant took and carried away property from the person or presence of the owner of the property; (2) The defendant took the property with the intent to steal; (3) The defendant acted forcibly. This requires that the defendant used force against the person with the intent to overcome, prevent physical resistance or physical power of resistance, to the taking or carrying away of the property; (4) At the time of the taking or carrying away, the defendant used or threatened to use a dangerous weapon. [WIS JI—CRIMINAL] 1480 [2016].

mark in the bottom right corner of the first page of the form that appears to be a checkmark. Regardless, the courts' conclusions in *Moederndorfer* and *Pegeese* do not appear to depend on such a notation.

¶27 Finally, Pate claims that even if the circuit court did not improperly rely on the plea questionnaire, "[r]eliance on the plea form in this case is also insufficient because the form was not clear or comprehensive in its presentation of the elements." He argues that the plea questionnaire "did not include a verbatim presentation of the elements" and did not "incorporate the jury instructions as an attachment." According to Pate, the summary of the elements on the plea questionnaire was not comprehensive, as it did not properly define "forcibly" or "dangerous weapon." Further, he asserts that the elements on the form were "almost illegibly tiny, and largely crossed through with a pre-printed line."

¶28 We disagree with Pate's contention that the plea questionnaire inadequately provided information regarding the elements of the crimes. What is required is that the defendant understands "the essential elements of the crime." *Bangert*, 131 Wis. 2d at 267. As described above, the plea questionnaire cited WIS JI—CRIMINAL 1480 (2016), which lists five elements that the State must prove. Those are the essential elements of the crimes. Pate's plea questionnaire includes all of them.[3] As to the plea questionnaire's legibility, Pate did not raise any concern with the legibility of the information on the plea questionnaire at his plea hearing. Further, we were able to read the information, and we see no issue.

---

[3] We note that the plea questionnaire merged elements one and two from WIS JI—CRIMINAL 1480 (2016)—"(Name) was the owner of property" and "[t]he defendant took and carried away property from the person or from the presence of (name)"—into one element on the form—"[t]he defendant took and carried away property from the person or presence of the owner of the property." (Formatting altered; footnotes omitted.)

¶29 Pate correctly notes that the additional definitions of "forcibly" and "dangerous weapon"[4] are not replicated on the plea questionnaire, but he fails to demonstrate that this inclusion is a requirement under the law. Further, the *Bangert* court explained that to "determine a defendant's understanding of the nature of the charge at the plea hearing" the circuit court may "summarize the elements of the crime charged by reading from the appropriate jury instructions … *or from the applicable statute*." *Bangert*, 131 Wis. 2d at 267-68 (emphasis added). As the State argues, WIS. STAT. § 943.32(2) does not include the definitions of "forcibly" and "dangerous weapon" that Pate argues needed to be explained to him; yet, it would be appropriate under *Bangert* to reference only the statutory language. Regardless, as the State notes, Pate has failed to provide any legal support for his claim that any of these alleged deficiencies rendered the plea colloquy insufficient.

¶30 We agree with the State that Wisconsin case law recognizes that circumstances may "lessen[] the extent and degree of the colloquy otherwise required between the trial court and the defendant." *See Hansen*, 168 Wis. 2d at 755; *Brown*, 293 Wis. 2d 594, ¶52; *Bangert*, 131 Wis. 2d at 267-68. Here, as we

---

[4] Pursuant to WIS JI—CRIMINAL 1480 (2016), "[f]orcibly" means

> the defendant [used force against (name) with the intent to overcome or prevent physical resistance or physical power of resistance to the taking or carrying away of the property] [or] [threatened the imminent use of force against (name) with the intent to compel (name) to submit to the taking or carrying away of the property].

(Formatting altered; footnote omitted.) A "dangerous weapon" is defined as "(any firearm, whether loaded or not) (any device designed as a weapon and capable of producing death or great bodily harm) (any device or instrumentality which in the manner it is used or intended to be used is calculated or likely to produce death or great bodily harm)." WIS JI—CRIMINAL 1480 (2016).

addressed above, the circuit court appropriately utilized the plea questionnaire during its colloquy. Further, there is no evidence in the record that Pate had any deficiencies that would impede his ability to understand the proceedings. *See Brown*, 293 Wis. 2d 594, ¶52. Instead, the record reveals that Pate was twenty-five years old at the time of his plea and he had completed eleven years of schooling. According to the court at the plea hearing, Pate was "listening carefully, [he was] answering appropriately and with confidence, [and he] seem[ed] to understand what [he was] doing." Further, Pate pled no contest to the same charge in a different county—Kewaunee County case No. 2019CF5—about six weeks before his pleas in this case. Thus, there is no evidence in the record that Pate required a more meaningful discussion of his rights at the plea hearing than what was provided in this case to ensure a knowing, intelligent, and voluntary plea. *See id.*, ¶76.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

15