# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:         2022AP199-CR

†Petition for Review filed

Complete Title of Case:

### STATE OF WISCONSIN,

#### PLAINTIFF-RESPONDENT,

#### V.

### KASEY ANN GOMOLLA,

#### DEFENDANT-APPELLANT.†

| | |
|---|---|
| Opinion Filed: | February 6, 2024 |
| Submitted on Briefs: | September 5, 2023 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Gill, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Megan Sanders-Drazen* of *Wisconsin Defense Initiative*, Madison. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joshua L. Kaul*, attorney general, and *Kieran M. O'Day*, assistant attorney general. |

COURT OF APPEALS
DECISION
DATED AND FILED

**February 6, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* **WIS. STAT. § 808.10 and RULE 809.62.**

**Appeal No.    2022AP199-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2016CF593

**IN COURT OF APPEALS**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

KASEY ANN GOMOLLA,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Brown County:  JOHN P. ZAKOWSKI, Judge.  *Judgment amended and, as amended, affirmed; order affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

¶1      STARK, P.J.   Kasey Ann Gomolla appeals from a judgment, entered upon her no-contest plea, convicting her of conspiracy to deliver methamphetamine

(more than fifty grams)[1] and from the circuit court's order denying her postconviction motion for plea withdrawal. As part of the plea agreement in this case, the State agreed to remove a second or subsequent offense enhancer from the charged crime, which reduced Gomolla's potential punishment from forty-six years to forty years.[2] However, defense counsel overlooked that fact in preparing Gomolla's plea questionnaire and in discussions with Gomolla prior to entry of her plea, and Gomolla was incorrectly informed by counsel that she was subject to a potential punishment of forty-six years. During the plea colloquy, the court did not correct the error, as it failed to address the potential punishment at all beyond

---

[1] There appears to be a clerical error in the judgment of conviction. The judgment erroneously lists the offense of conviction as conspiracy to deliver amphetamine, rather than methamphetamine, which both fall under the same statutory provision, WIS. STAT. § 961.41(1)(e) (2021-22), and carry the same maximum statutory penalty. The transcript of the plea hearing clearly and unambiguously reflects that Gomolla entered a plea to conspiracy to deliver methamphetamine. *See State v. Prihoda*, 2000 WI 123, ¶24, 239 Wis. 2d 244, 618 N.W.2d 857 ("[A]n unambiguous oral pronouncement controls when a conflict exists between a court's oral pronouncement of sentence and a written judgment.").

"Correcting a clerical error in a judgment does not constitute a modification of that judgment; rather, it is simply a correction of the record to reflect the judgment the circuit court actually rendered." *State v. Schwind*, 2019 WI 48, ¶30 n.5, 386 Wis. 2d 526, 926 N.W.2d 742. Accordingly, the defect in the judgment of conviction may be corrected at any time at the direction of the circuit court, and no remand by this court is necessary. *See Prihoda*, 239 Wis. 2d 244, ¶¶5, 17, 51. Upon remittitur, the circuit court shall enter an amended judgment of conviction stating that Gomolla was convicted of conspiracy to deliver methamphetamine, rather than amphetamine.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] *State v. Finley*, 2016 WI 63, ¶4, 370 Wis. 2d 402, 882 N.W.2d 761, explains that the term "'potential punishment' has not been defined in the statutes or the case law," but "[i]n analyzing whether a defendant was correctly advised of the potential punishment, our cases have looked to the maximum statutory penalty, that is, the maximum sentence provided for by statute." "Some cases use the phrase 'range of punishments' in addition to or in place of 'potential punishment.' 'Range of punishments,' 'potential punishment,' 'maximum statutory penalty,' and various other phrases are used synonymously in the cases to mean 'potential punishment.'" *Id.* Accordingly, we will use "potential punishment" and "maximum statutory penalty" interchangeably throughout this decision.

confirming that Gomolla had reviewed the plea questionnaire that overstated Gomolla's potential punishment by six years.

¶2    Gomolla argues before this court that she is entitled to withdraw her no-contest plea because the circuit court failed to advise her of the maximum statutory penalty she faced during the plea colloquy, which constitutes a plea colloquy defect. She further claims that because defense counsel misinformed her of the potential punishment, she was unaware of the true penalty she faced; therefore, her plea was not knowing, intelligent, and voluntary.

¶3    We assume, without deciding, that the circuit court's plea colloquy was defective because the court failed to establish that Gomolla understood her potential punishment, which the court is required to ascertain under Wisconsin law. *See* WIS. STAT. § 971.08; *State v. Bangert*, 131 Wis. 2d 246, 262, 389 N.W.2d 12 (1986).

¶4    We conclude, however, that despite the defective plea colloquy, the State presented clear and convincing evidence that Gomolla nevertheless understood the potential punishment she faced if convicted. While Gomolla was informed that she faced a higher maximum statutory penalty than authorized by law, pursuant to our supreme court's decision in *State v. Cross*, 2010 WI 70, 326 Wis. 2d 492, 786 N.W.2d 64, "a defendant can be said to understand the range of punishments as required by [WIS. STAT.] § 971.08 and *Bangert* when the maximum sentence communicated to the defendant is higher, but not substantially higher, than the actual allowable sentence." *See Cross*, 326 Wis. 2d 492, ¶38. Although it was counsel who provided the incorrect information to Gomolla, rather than the circuit court as in *Cross*, the forty-six-year sentence communicated to Gomolla was higher,

but not substantially higher, than the forty-year maximum statutory penalty she actually faced.

¶5     We therefore conclude that Gomolla understood the potential punishment, as required by WIS. STAT. § 971.08 and ***Bangert***, and that her plea was knowing, intelligent, and voluntary.  Accordingly, Gomolla is not entitled to withdraw her plea, and we affirm.

## BACKGROUND

¶6     According to the State, Gomolla was a co-conspirator in an expansive drug trafficking scheme.  Gomolla observes that the "details regarding her role in the trafficking scheme remain elusive,"[3] but what is relevant for this appeal is that Gomolla was charged with two drug crimes: conspiracy to deliver methamphetamine (more than fifty grams) and soliciting the delivery of THC (between 1,000 grams and 2,500 grams), both charges as a second and subsequent offense.

¶7     Gomolla and the State reached an agreement wherein Gomolla would plead no contest to conspiracy to deliver more than fifty grams of methamphetamine—a Class C felony—while the soliciting delivery of between 1,000 grams and 2,500 grams of THC charge would be dismissed and read in.  The State also agreed to dismiss the second and subsequent offense enhancer.  Without the enhancer, Gomolla faced a forty-year maximum statutory penalty, while her exposure was forty-six years with the enhancer.  *See* WIS. STAT. §§ 939.50(3)(c), 961.48(1)(a).  The State's offer included a joint recommendation of seven years'

---

[3] As the State explains, "[t]he probable cause section of Gomolla's criminal complaint is presently under seal.  However, the factual background of her charges is not imperative to the resolution of this appeal."

initial confinement followed by ten years' extended supervision, but if Gomolla wished to argue, then the State agreed to cap its recommendation at eight years' initial confinement followed by eight years' extended supervision.

¶8      Gomolla completed a Plea Questionnaire/Waiver of Rights form. The plea questionnaire correctly stated that she was pleading to the methamphetamine charge, but the form incorrectly included the second and subsequent offense enhancer as well as the forty-six-year potential maximum statutory penalty. Gomolla initialed each section of the plea questionnaire and signed it.

¶9      At the plea hearing, the circuit court confirmed with Gomolla that she reviewed the plea questionnaire with defense counsel and that Gomolla understood the form. The court noted that "all of the penalties … have been attached" to the plea questionnaire and asked if Gomolla "had enough time to go over this plea form." It also confirmed that Gomolla understood that the court was not required to abide by any sentencing recommendation and could sentence her to the maximum statutory penalty. However, apart from this discussion, the court did not further address the potential punishment on the record.

¶10     After the plea colloquy, the circuit court announced that it would accept Gomolla's plea to conspiracy to deliver more than fifty grams of methamphetamine *with* the second and subsequent offense enhancer. At that point, the State interjected, stating, "[I]t's the State's understanding that the repeater was going to be dismissed." Defense counsel agreed, and the court dismissed the enhancer. The court did not, however, correct the maximum statutory penalty on the record. Later, the court sentenced Gomolla to twelve years' initial confinement followed by fifteen years' extended supervision.

¶11    Gomolla then filed a postconviction motion to withdraw her plea, seeking either resentencing on the ground of ineffective assistance of counsel or plea withdrawal based on the circuit court's failure to advise her of the maximum statutory penalty she faced before accepting her plea, which Gomolla claimed she did not otherwise know or understand.[4]  The court held an evidentiary hearing on Gomolla's motion, which served as both a *Machner*[5] hearing and, as relevant here, a *Bangert* hearing.  Both defense counsel and Gomolla testified.

¶12    The circuit court then issued a written decision denying Gomolla's postconviction motion for resentencing or plea withdrawal.  As relevant to the *Bangert* claim, the court concluded:

> [T]here was a satisfactory plea colloquy to establish that the defendant's plea was knowingly, intelligently and voluntarily made.  However, if one would find that the plea colloquy was defective, the court believes the State clearly demonstrated at the motion hearing by clear and convincing evidence that the defendant understood her rights and that her plea was knowingly, intelligently, and voluntarily made.

In reaching this conclusion, the court acknowledged defense counsel's error regarding the maximum statutory penalty communicated to Gomolla.  However, the court relied on our supreme court's decision in *Cross* for the proposition that an incorrectly communicated sentence does not constitute a *Bangert* violation "where the sentence communicated to the defendant is higher, but not substantially higher, than that authorized by law." *See Cross*, 326 Wis. 2d 492, ¶40.  Gomolla appeals.

---

[4] Gomolla does not renew her ineffective assistance of counsel claim on appeal and has therefore abandoned it. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the [circuit] court, but not raised on appeal, is deemed abandoned.").

[5] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

**DISCUSSION**

¶13    After sentencing, "a plea will not be disturbed unless the defendant establishes by clear and convincing evidence that failure to withdraw the guilty or no contest plea will result in a manifest injustice." *State v. Taylor*, 2013 WI 34, ¶48, 347 Wis. 2d 30, 829 N.W.2d 482.  A defendant may demonstrate a manifest injustice by showing that he or she did not knowingly, intelligently, and voluntarily enter his or her plea.  *State v. Brown*, 2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906.  "A plea that was 'not entered knowingly, voluntarily, and intelligently violates fundamental due process, and a defendant therefore may withdraw the plea as a matter of right.'"  *State v. Dillard*, 2014 WI 123, ¶37, 358 Wis. 2d 543, 859 N.W.2d 44 (citation omitted).

¶14    In Wisconsin, "[t]he duties established in WIS. STAT. § 971.08, in *Bangert*, and in subsequent cases are designed to ensure that a defendant's plea is knowing, intelligent, and voluntary."  *Brown*, 293 Wis. 2d 594, ¶23 (footnote omitted).  Section 971.08, for example, "sets forth mandatory requirements that must be met before the circuit court may accept a defendant's guilty or no contest plea," *State v. Pegeese*, 2019 WI 60, ¶22, 387 Wis. 2d 119, 928 N.W.2d 590, including that courts must "[a]ddress the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted," § 971.08(1)(a).  "Although [§] 971.08 is not a constitutional imperative, the procedure of the statute nevertheless is designed to assist the [circuit] court in making the constitutionally required determination that a defendant's plea is voluntary."  *Bangert*, 131 Wis. 2d at 261.  The requirement that the court personally address the defendant and establish that the defendant understand "the nature of the crime with which he [or she] is charged and the range of punishments to which he [or she] is subjecting himself [or herself] by entering a

plea" is just one item on a list of the court's duties at a plea hearing developed by our supreme court to ensure a knowing, intelligent, and voluntary plea. *Brown*, 293 Wis. 2d 594, ¶¶34-35 (citing *Bangert*, 131 Wis. 2d at 261-62).

¶15     If the circuit court fails to fulfill one of the listed duties—either court-mandated or under WIS. STAT. § 971.08—the defendant may move to withdraw his or her plea. *Bangert*, 131 Wis. 2d at 274. In this motion—referred to as a *Bangert* motion—the defendant "must (1) make a prima facie showing of a violation of [§] 971.08 or other court-mandated duty, and (2) allege that the defendant did not, in fact, know or understand the information that should have been provided during the plea colloquy." *Taylor*, 347 Wis. 2d 30, ¶32.

¶16     If the defendant's *Bangert* motion meets these requirements, then he or she is entitled to an evidentiary hearing. *Pegeese*, 387 Wis. 2d 119, ¶27. At the *Bangert* hearing, the burden shifts to the State to prove "by clear and convincing evidence that the defendant's plea, despite the inadequacy of the plea colloquy, was knowing, intelligent, and voluntary." *Pegeese*, 387 Wis. 2d 119, ¶27 (citation omitted).

> If a defendant does not understand the nature of the charge and the implications of the plea, he [or she] should not be entering the plea, and the [circuit] court should not be accepting the plea. On the other hand, if a defendant does understand the charge and the effects of his [or her] plea, he [or she] should not be permitted to game the system by taking advantage of judicial mistakes.

*Brown*, 293 Wis. 2d 594, ¶37. "The State may use 'any evidence' to prove that the defendant's plea was knowing, intelligent, and voluntary, including any documents in the record and testimony of the defendant or defendant's counsel." *Taylor*, 347 Wis. 2d 30, ¶32 (citation omitted). If the State does not meet its burden at the

*Bangert* hearing, then the defendant is entitled to withdraw his or her guilty or no-contest plea. *Pegeese*, 387 Wis. 2d 119, ¶27.

¶17 "Where a defendant seeks to withdraw a guilty or no contest plea post-sentencing due to a claimed error in the plea colloquy, the proper analysis has two steps": (1) we "determine if the defendant should be allowed to withdraw the plea because the circuit court violated its duty under WIS. STAT. § 971.08 or other court-mandated duty"; and (2) "we 'determine, if necessary, whether the failure to withdraw the plea would otherwise result in a manifest injustice.'" *Pegeese*, 387 Wis. 2d 119, ¶25 (citation omitted).

¶18 Here, the circuit court held an evidentiary hearing on Gomolla's motion for plea withdrawal, which presupposes a deficient colloquy. *See Brown*, 293 Wis. 2d 594, ¶40. The question before this court is, therefore, whether the circuit court properly concluded that the State met its burden to prove that Gomolla's plea was knowing, intelligent, and voluntary. *See State v. Hoppe*, 2009 WI 41, ¶44, 317 Wis. 2d 161, 765 N.W.2d 794. Our review of a circuit court's denial of a defendant's postconviction motion for plea withdrawal after an evidentiary hearing is a question of constitutional fact: "[W]e accept the circuit court's findings of historical and evidentiary fact unless they are clearly erroneous," but "[w]e independently determine whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary." *Id.*, ¶45.

¶19 The volume of case law on the subject of plea colloquies is robust. However, this appeal presents what appears to be a factually distinguishable set of circumstances. The State and Gomolla disagree as to precisely how we should analyze this case. We agree with the State, however, that Gomolla is arguing two errors that occurred during the plea process. First, Gomolla argues that "[t]he circuit

9

court failed to address the maximum penalties—at all—during the plea colloquy." *See **Brown***, 293 Wis. 2d 594, ¶35 ("range of punishments"); WIS. STAT. § 971.08(1)(a) ("potential punishment"). Second, Gomolla argues that defense counsel "told [her] the wrong maximum penalties when they went through the plea questionnaire together," that the plea questionnaire contained the incorrect maximum penalty, and that neither the State nor the court corrected the error at the plea hearing.[6] Accordingly, because Gomolla was not told the correct maximum statutory penalty, she claims the State could not prove "by clear and convincing evidence that [her] plea, despite the inadequacy of the plea colloquy, was knowing, intelligent, and voluntary." *See **Pegeese***, 387 Wis. 2d 119, ¶27 (citation omitted).

*I. Plea Colloquy Defect*

¶20    On the first issue, the State concedes that the circuit "court's failure to discuss the range of punishment likely merited an evidentiary hearing by itself," *see **Brown***, 293 Wis. 2d 594, ¶¶35-36; therefore, "because the circuit court failed to mention Gomolla's potential maximum [statutory penalty], the State [does] not dispute that Gomolla made a prima facie showing of a ***Bangert*** violation." Given the State's concession, we need not address whether the court's plea colloquy was

---

[6] We pause here to reiterate that Gomolla has abandoned her ineffective assistance of counsel claim on appeal. Thus, defense counsel's deficient performance by failing to inform Gomolla of the correct maximum statutory penalty is not at issue before this court. Further, as Gomolla argues that the circuit court did not address the potential punishment at all, she is not claiming the incorrect maximum statutory penalty issue *itself* as a ***Bangert*** violation. *See **State v. Bangert***, 131 Wis. 2d 246, 389 N.W.2d 12 (1986). In other words, Gomolla is not arguing that the court informed her of the incorrect maximum statutory penalty. *See **State v. Cross***, 2010 WI 70, ¶¶1-5, 326 Wis. 2d 492, 786 N.W.2d 64.

10

legally deficient, and we will assume, without deciding, that it was.[7]  The State acknowledges, then, that under the circumstances, the burden shifted, requiring it to present sufficient evidence that Gomolla otherwise understood the potential punishment.  According to the State, it "easily met that burden."

¶21    When the burden shifts to the State at the ***Bangert*** hearing, "the [S]tate [is] required to show that the defendant in fact possessed the constitutionally required understanding and knowledge which the defendant alleges the inadequate plea colloquy failed to afford him [or her]."  ***Bangert***, 131 Wis. 2d at 275.  To do so, "[t]he [S]tate may examine the defendant or defendant's counsel to shed light on the defendant's understanding or knowledge of information necessary for him [or her] to enter a voluntary and intelligent plea."  ***Id.***  Accordingly, it is not the execution of the court-mandated or WIS. STAT. § 971.08 duties *in and of themselves* that make a defendant's plea knowing, intelligent, and voluntary—although the circuit court's "duty to inform … is a logical outgrowth of the constitutional standard that a defendant's plea be knowingly, voluntarily, and intelligently entered."  *See* ***Bangert***, 131 Wis. 2d at 269-70.  Instead, the court's duties in this regard are "designed to *ensure that* a defendant's plea is knowing, intelligent, and voluntary," ***Brown***, 293 Wis. 2d 594, ¶23 (emphasis added), and to "assist the [circuit] court in *making the constitutionally required determination* that a defendant's plea is voluntary" by confirming that the defendant understands the nature of the charge and the rights that he or she is waiving by pleading guilty or no contest, ***Bangert***, 131 Wis. 2d at 261, 265-66, 270 (emphasis added).

---

[7] For a discussion of this issue, see ***Bangert***, 131 Wis. 2d at 267-68; ***State v. Brown***, 2006 WI 100, ¶¶46-48, 293 Wis. 2d 594, 716 N.W.2d 906; ***State v. Hoppe***, 2009 WI 41, ¶¶32-34, 317 Wis. 2d 161, 765 N.W.2d 794; ***State v. Pegeese***, 2019 WI 60, ¶37, 387 Wis. 2d 119, 928 N.W.2d 590; ***State v. Moederndorfer***, 141 Wis. 2d 823, 828, 416 N.W.2d 627 (Ct. App. 1987); and ***State v. Hansen***, 168 Wis. 2d 749, 755-56, 485 N.W.2d 74 (Ct. App. 1992).

¶22 At the evidentiary hearing, defense counsel testified that she "had over [twenty-five] meetings with [Gomolla] on [this case and one in another county] and those were in-person meetings." Defense counsel stated that Gomolla had never been to prison before, so counsel was careful to explain "the concept of a bifurcated prison sentence" and even "diagrammed what a bifurcated prison sentence is on at least two separate occasions" because "the concept of a bifurcated prison sentence is fairly difficult for people to understand." Defense counsel also testified that she "tried to explain … the options of the contested sentencing versus the stipulated sentencing and [counsel] believed that [Gomolla] understood that." According to defense counsel, she was "mindful of the fact that Ms. Gomolla had a mental health condition," and counsel even postponed a plea in another county "because [Gomolla] was not on her medication and [counsel] was not comfortable doing the plea[]."

¶23 As to Gomolla's plea questionnaire, defense counsel admitted that she "made a mistake" and "did not delete the penalty enhancer as far as the maximum penalty," and counsel "accept[ed] responsibility for that." Nevertheless, defense counsel testified: "I do believe [Gomolla] understood the offer." Defense counsel further explained:

> My practice is to go through the plea advisement line by line with the client and have them initial it. After I'm satisfied that they understand it[,] I normally read it to them and ask them to explain it back to me. I also go over the jury instructions with them.

Defense counsel's testimony was further supported by the plea questionnaire in the record, which includes Gomolla's initials on each line of the form. The circuit court additionally questioned defense counsel as to whether she reviewed the maximum statutory penalty with Gomolla, and counsel affirmed that she was "sure" that she

had and that the maximum statutory penalty advisement on the plea questionnaire was also initialed by Gomolla.

¶24    In contrast, Gomolla testified at the evidentiary hearing that defense counsel "went over [the questionnaire] with [her] … but [she was] sure [counsel] didn't go over it with [her] properly." According to Gomolla, defense counsel "rushes through stuff" and "doesn't just take her time." Gomolla admitted that she signed the plea questionnaire and that she reviewed each line of the form with defense counsel. However, Gomolla did not "remember [counsel] ever going over [the lines of the form] with me very properly." In response to a question regarding whether Gomolla remembered a conversation with defense counsel regarding the maximum statutory penalty, Gomolla responded, "No. Not really." According to Gomolla, she could not "even remember doing the questionnaire."

¶25    Based on this testimony, the circuit court found that Gomolla's plea was knowingly, intelligently, and voluntarily made. The court specifically found Gomolla not credible. It stated:

> The court does not believe, contrary to Gomolla's testimony, that the plea questionnaire was rushed through given the physical evidence of the plea form itself. It is clear that there was sufficient time spent going over this plea questionnaire. It was one of the more detailed plea questionnaires that the court has seen. There is information on the plea questionnaire that is rarely seen including the high school that the defendant attended, the medical diagnosis that the defendant was being treated for, and some of the medications that she was tak[ing] and the frequency that they were taken. One has to take the time to physically write out "Wausau East, depression, anxiety, ADD, prescribed Prozac two times a day and Celexa one time a day" in addition to having the defendant personally sign each and every single line. This would also indicate to the court, as was argued by the State, that the plea questionnaire was a document which had to be prepared with close consultation between the defendant and her attorney. There was informational input from the defendant to her attorney.

13

> The defendant remembered some of the items of the plea questionnaire but later testified she does not remember filling it out at all.

The court finally concluded that "if one would find that the plea colloquy was defective, the court believes the State clearly demonstrated at the motion hearing by clear and convincing evidence that the defendant understood her rights and that her plea was knowingly, intelligently, and voluntarily made."

¶26 We agree with the circuit court's ultimate conclusion.[8] Setting aside for a moment that Gomolla was informed by defense counsel that the potential punishment was forty-six years rather than forty years and considering the question purely from the posture of the plea colloquy defect—that being, the court's failure to address the maximum statutory penalty with Gomolla—we conclude that the State met its burden. The court properly determined, based on the entire record and the testimony of Gomolla and defense counsel, that Gomolla was aware of and understood the "[potential punishment] to which [she was] subjecting [her]self by entering a plea," despite the court's failure to address the issue during the plea colloquy. *See **Brown***, 293 Wis. 2d 594, ¶35; *see also* WIS. STAT. § 971.08(1)(a). In other words, absent the fact that defense counsel informed Gomolla of the wrong maximum statutory penalty, our review would end here.

## II. Higher Potential Punishment

¶27 Our conclusion above then begets the next question: what impact does the fact that Gomolla was told the incorrect potential punishment have on Gomolla's claim that her plea was not knowingly, voluntarily, and intelligently made? Gomolla argues that the incorrect potential punishment changes

---

[8] Gomolla does not challenge any of the circuit court's findings of fact as being clearly erroneous.

everything: "Misinformation from [defense] counsel plus zero information from the circuit court does not equal information sufficient to establish the validity of Ms. Gomolla's plea." Essentially, Gomolla claims, the State could not meet its burden to prove "that [Gomolla] understood the penalties she faced [where] her lawyer got them wrong, and [where] the circuit court was silent on the topic." According to the State, however, answering this question "is where *Cross* comes in."

¶28    In *Cross*, the defendant was misinformed as to his maximum potential punishment by the circuit court, the State, and his attorney at his plea hearing. *Cross*, 326 Wis. 2d 492, ¶8. Cross pled guilty to second-degree sexual assault, at which time he was told that he was subject to forty years' imprisonment rather than thirty years' imprisonment. *Id.*, ¶1. The court sentenced Cross to what it believed to be the maximum—forty years. *Id.*, ¶10. Cross later moved for postconviction relief, arguing, among other things, that his plea was not knowing, intelligent, and voluntary because he was incorrectly advised of the maximum term of imprisonment. *Id.*, ¶11 & n.4. The court denied plea withdrawal, but it granted resentencing and later resentenced Cross to the appropriate thirty-year maximum. *Id.*, ¶12.

¶29    Our supreme court affirmed the denial of Cross' motion to withdraw his plea. *Id.*, ¶5. In doing so, the court held:

> [W]here a defendant is told that he [or she] faces a maximum possible sentence that is higher, but not substantially higher, than that authorized by law, the circuit court has not violated the plea colloquy requirements outlined in WIS. STAT. § 971.08 and our *Bangert* line of cases. In other words, where a defendant pleads guilty with the understanding that he [or she] faces a higher, but not substantially higher, sentence than the law allows, the circuit court has still fulfilled its duty to inform the defendant of the range of punishments. Therefore, the defendant is not entitled to an evidentiary hearing, and plea withdrawal remains in the discretion of the circuit court and will not be disturbed unless

15

> the defendant shows that it is necessary to correct a manifest injustice.

*Cross*, 326 Wis. 2d 492, ¶4. According to the court, "[t]his [holding] accords with common sense; not all small deviations from the requirements in our **Bangert** line of cases equate to a **Bangert** violation and require a formal evidentiary hearing." *Cross*, 326 Wis. 2d 492, ¶38. The court continued that "when the difference is significant, or when the defendant is told the sentence is lower than the amount allowed by law, a defendant's due process rights are at greater risk and a **Bangert** violation may be established." *Cross*, 326 Wis. 2d 492, ¶39. Finally, the court refused to otherwise find that plea withdrawal was necessary to correct a manifest injustice, explaining that "[t]he only flaw Cross points to is that the plea was made with a misunderstanding of the precise maximum sentence." *Id.*, ¶¶42-44.

¶30 According to the State, "*Cross* stands for the proposition that no **Bangert** violation occurs, and there is therefore no manifest injustice warranting plea withdrawal, where the 'maximum sentence communicated to the defendant is higher, but not substantially higher, than the actual allowable sentence,'" which "is what occurred here." *See Cross*, 326 Wis. 2d 492, ¶38. The State argues that, in this case, "[h]ad it been the circuit court that informed Gomolla that she faced 46 years instead of 40, that mistake alone would not have warranted a **Bangert** hearing at all, let alone plea withdrawal." *See Cross*, 326 Wis. 2d 492, ¶30. "It would be illogical," explains the State, "for the same mistake to not merit an evidentiary hearing on one hand but permit plea withdrawal on the other. Defense counsel's miscommunication of a potential range of punishment is still communication of a potential range of punishment."

¶31 We agree with the State that *Cross* provides persuasive guidance. The circumstances in this case are very similar to those in *Cross*: both defendants were

informed that the maximum statutory penalty was higher than that authorized by law; defense counsel informed both defendants of the incorrect potential punishment; the incorrect maximum statutory penalty was included on the plea questionnaire; and the circuit court did not correct the error at the plea hearing. *Id.*, ¶¶1, 8. We agree with the State that if the court, here, had questioned Gomolla on the record regarding her understanding of the incorrect maximum statutory penalty, instead of not addressing it, then this case would have been controlled by *Cross*. Given that the six-year difference between the actual maximum statutory penalty and the sentence communicated to Gomolla was less than the ten-year difference approved in *Cross*, we are confident that Gomolla would have been denied a *Bangert* hearing based on her failure to make a prima facie showing of a violation of WIS. STAT. § 971.08 or other court-mandated duty. *See Cross*, 326 Wis. 2d 492, ¶4; *Taylor*, 347 Wis. 2d 30, ¶32.

¶32    Instead, the key difference between this case and *Cross* is the lack of the circuit court's direct involvement in the error. However, in both cases, the defendant was misinformed regarding the maximum statutory penalty and did not know the actual maximum statutory penalty; thus, the result in each case should be the same whether the misinformation as to the potential punishment was provided only by the defendant's counsel or by counsel *and* the court.

¶33    While it is true, as Gomolla argues, that the posture of *Cross* was pre-*Bangert* hearing, so the burden to prove that her plea was knowing, voluntary, and intelligent had not yet shifted to the State, Gomolla fails to provide a persuasive argument for why her misunderstanding of the precise maximum statutory penalty requires a different result in this post-*Bangert*-hearing case. Gomolla asserts that in *Cross*, the plea was presumed to be knowing, intelligent, and voluntary and that Cross had the burden to overcome that presumption by establishing a *Bangert*

violation. As a result, the "benefit of the doubt" went to the State. Gomolla contends that, in this case, her plea is presumed to be invalid because the ***Bangert*** violation was established; therefore, "the benefit of the doubt goes to Ms. Gomolla."

¶34    We conclude that regardless of whether or not we presume Gomolla's plea was invalid, and whether or not the burden shifted to the State to prove that Gomolla's plea was knowingly, intelligently, and voluntarily made, we must determine whether Gomolla understood the potential punishment she faced if convicted. To answer that question, according to ***Cross***, we must determine whether the "maximum sentence communicated to the defendant [was] higher, but not substantially higher, than the actual allowable sentence." *See **Cross***, 326 Wis. 2d 492, ¶38.

¶35    Here, defense counsel told Gomolla that the maximum statutory penalty she faced was forty-six years, and the clear and convincing evidence at the evidentiary hearing established that Gomolla knew and understood that the maximum statutory penalty was forty-six years when she entered her plea. ***Cross*** unequivocally states that

> where the sentence communicated to the defendant is higher, but not substantially higher, than that authorized by law, the incorrectly communicated sentence does not constitute a ***Bangert*** violation and will not, as a matter of law, be sufficient to show that the defendant was deprived of his [or her] constitutional right to due process of law.

*Cross*, 326 Wis. 2d 492, ¶40.

¶36    While the forty-six-year maximum statutory penalty was incorrect, "the sentence communicated to [Gomolla was] higher, but not substantially higher, than" the forty-year maximum statutory penalty authorized by law. *See **id.*** If Gomolla understood she was subject to a potential punishment of forty-six years,

18

then she "[was] obviously aware that" she could receive a forty-year sentence. *See id.*, ¶¶30-31 ("[A] defendant who believes he [or she] is subject to a greater punishment is obviously aware that he [or she] may receive the lesser punishment" and is not "likely to be affected by insubstantial differences in possible punishments."); *see also **State v. Finley***, 2016 WI 63, ¶153, 370 Wis. 2d 402, 882 N.W.2d 761 (Ziegler, J., dissenting) ("There is a principle present in both ***Cross*** and ***Taylor***—namely, that incorrect or insufficient knowledge about an aspect of a plea does not necessarily invalidate the entire plea ….").

¶37  Therefore, we conclude that Gomolla should not be allowed to withdraw her plea based on the circuit court's failure to address the potential punishment during the plea colloquy because Gomolla's plea was knowing, intelligent, and voluntary.  *See **Pegeese***, 387 Wis. 2d 119, ¶25.  The State established that fact by clear and convincing evidence.  The only flaw in Gomolla's plea is that it was made with a misunderstanding of the precise maximum statutory penalty.  Gomolla, nevertheless, understood the potential punishment, and plea withdrawal is not required to correct a manifest injustice.  *See **Cross***, 326 Wis. 2d 492, ¶38.

¶38  In reply, Gomolla challenges the "State's peculiar reframe of the issue," claiming that the State's argument "disaggregates the question presented into misleading parts and conflates discrete issues in the process."  She claims that the State argues that Gomolla need only grasp "a potential range of punishment," even if incorrect, which is a "low bar," "makes little sense, violates case law, and would lead courts to uphold pleas that fall short of the constitutional standard[s]."  According to Gomolla:

> Whether Ms. Gomolla's plea was knowing, intelligent, and voluntary despite her defective colloquy turns on whether she learned what she needed to—the penalties *she*

19

> *actually faced*—from sources outside the colloquy…. But proving that the person learned the *wrong* thing from an extrinsic source, as here, does no good. Such evidence is worse than irrelevant: it suggests the defendant lacked a full understanding of the direct consequences of her plea—that she was misled before waiving a host of constitutional rights. It undercuts, rather than proves, the validity of her plea.

¶39 We understand Gomolla's concern, and we certainly do not suggest that the circuit court or counsel should provide anything other than accurate potential punishment information to defendants. However, Gomolla's argument here ignores the important purpose of a ***Bangert*** hearing: to discover whether there is "any evidence" in the record demonstrating that the defendant was in fact provided the necessary information from a source other than the circuit court. *See **Bangert***, 131 Wis. 2d at 275 ("In essence, the [S]tate will be required to show [at a ***Bangert*** hearing] that the defendant in fact possessed the constitutionally required understanding and knowledge which the defendant alleges the inadequate plea colloquy failed to afford him [or her]."); ***Taylor***, 347 Wis. 2d 30, ¶32 (citation omitted). To that end, we conclude that the holding in ***Cross*** applies to the question of whether Gomolla "possessed the constitutionally required understanding and knowledge" that "the inadequate plea colloquy failed to afford" her. *See **Bangert***, 131 Wis. 2d at 275.

¶40 As to Gomolla's claim that her case "turns on whether she learned what she needed to—the penalties *she actually faced*—from sources outside the colloquy," we disagree. Importantly, we see no requirement in ***Cross*** that the State prove that Cross *actually knew* the precise maximum statutory penalty, even though Cross was informed of the wrong potential punishment. *See **Cross***, 326 Wis. 2d 492, ¶¶40-41. That fact was inconsequential. Instead, given the facts in ***Cross***, it is clear that Cross entered his plea without knowing the correct maximum statutory

penalty because the parties belatedly became aware of the issue.[9] Yet, our supreme court concluded "that Cross did understand the [potential punishment]." *Cross*, 326 Wis. 2d 492, ¶41; *see also Finley*, 370 Wis. 2d 402, ¶¶70, 73-74.

¶41 Therefore, under *Cross*, it is within constitutional boundaries that a defendant may have an incorrect understanding of the maximum statutory penalty and still enter his or her plea knowingly, intelligently, and voluntarily, as long as the sentence communicated is higher, but not substantially higher, than that authorized by law. *See Cross*, 326 Wis. 2d 492, ¶40.

¶42 Finally, Gomolla argues that our supreme court's decision in *Finley* "is a much closer analog to the case at hand." In *Finley*, the defendant was informed by the circuit court during the plea colloquy that the maximum statutory penalty was nineteen years and six months, when the maximum was actually twenty-three years and six months. *Finley*, 370 Wis. 2d 402, ¶8. The sentencing information was not corrected, and Finley was subsequently sentenced to the maximum, which was more time than he was told he would face. *Id.*, ¶¶32-33.

¶43 By the time the case reached our supreme court (after remand and a second appeal), the State had conceded that the circuit court erred and had abandoned an argument that it satisfied its burden to prove that Finley knew the potential punishment he faced when he entered his plea. *Id.*, ¶9 & n.7, ¶53. Thus, the focus of the case was "on the *remedy*"—either commutation of Finley's sentence or plea withdrawal—"for the circuit court's misstatement of the potential punishment if convicted, when Finley lacked knowledge of the potential

---

[9] Cross' defense counsel discovered the error after filing a motion for postconviction relief based on the "changeover from Truth in Sentencing 1 guidelines … to Truth in Sentencing 2 guidelines." *Cross*, 326 Wis. 2d 492, ¶11 & n.4. Accordingly, there is no possibility that Cross was actually ever informed of the correct maximum statutory penalty prior to his plea.

punishment." *Id.*, ¶¶9-10. Under the circumstances of the case, the court held that the appropriate remedy was to allow the defendant to withdraw his plea. *Id.*, ¶95. Gomolla explains that she seeks the same treatment here.

¶44 *Finley* is clearly distinguishable on its facts.[10] Unlike in Gomolla's case, Finley was misinformed by the circuit court *and* on the plea questionnaire about the potential maximum statutory penalty, and the sentence communicated to Finley was *lower*, not higher, than the actual maximum statutory penalty. *Id.*, ¶¶8, 28-29. Finley's counsel also had no independent recollection of discussing the maximum statutory penalty with him. *Id.*, ¶47. Further, the circuit court in *Finley* imposed the maximum statutory penalty, such that Finley was sentenced to more incarceration than he had been aware he was facing. *Id.*, ¶33. And, finally, the State in *Finley* conceded on appeal that it failed to prove that Finley understood the potential punishment. *Id.*, ¶9 & n.7, ¶53. Therefore, we are not convinced that the court's conclusion in *Finley* requires any particular result here.

¶45 The final step in our analysis, then, is to determine "whether the failure to withdraw the plea would otherwise result in a manifest injustice." *See Pegeese*, 387 Wis. 2d 119, ¶25 (citation omitted). "The 'manifest injustice' test requires a defendant to show 'a serious flaw in the fundamental integrity of the plea.'" *State v. Thomas*, 2000 WI 13, ¶16, 232 Wis. 2d 714, 605 N.W.2d 836 (citation omitted). Like in *Cross*, "[t]he only flaw [Gomolla] points to is that the plea was made with a misunderstanding of the precise maximum sentence." *See Cross*, 326 Wis. 2d 492, ¶42. We, too, conclude that Gomolla's

---

[10] The *Finley* court also concluded that the facts of that case were "substantially different from those in *Cross*." *Finley*, 370 Wis. 2d 402, ¶74. That being said, the court did not overrule or modify *Cross*' holding. *See Finley*, 370 Wis. 2d 402, ¶95.

misunderstanding is insufficient under the facts of this case to establish a manifest injustice. *See id.*

¶46    Therefore, we affirm the circuit court's order denying Gomolla's motion to withdraw her plea based on the court's failure to address the potential punishment during the plea colloquy and the fact that Gomolla was informed of a higher, but not substantially higher, maximum statutory penalty. Gomolla's plea was entered knowingly, intelligently, and voluntarily.

        *By the Court.*—Judgment amended and, as amended, affirmed; order affirmed.